Roland WRIGHT, Anna Wright, Individually and on behalf of all others similarly situated, Plaintiffs-Appellees, Cross-Appellants,

v.

Joseph A. CALIFANO, Jr., Secretary of the United States Department of Health, Education and Welfare et al., Defendants-Appellants, Cross-Appellees.

Nos. 78–1174 and 78–1175.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1978.

Decided Nov. 16, 1978.

Rehearing and Rehearing En Banc Denied Jan. 5, 1979.

A. George Lowe, Baltimore, Md., for defendants-appellants, cross-appellees.

Lucy A. Williams, Chicago, Ill., for plaintiffs-appellees, cross-appellants.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The question presented in this appeal is whether the district court erred in ordering the Social Security Administration to either provide hearings and Appeals Council re-

* The Honorable William J. Campbell, Senior United States District Judge of the Northern District of Illinois, is sitting by designation.

views within certain time limits when requested by unsuccessful applicants for old age and survivors benefits, or else make interim payments of benefits until a final unfavorable decision has been rendered by the applicable administrative body. The court granted this relief on the grounds that the lengthy delays presently prevalent in the Social Security system violate the mandate of the Social Security Act and Administrative Procedure Act for the provision of hearings within a reasonable time. We reverse on the grounds that the delays in question, although undesirable, do not violate the applicant's due process rights and are not so unreasonable as to constitute a breach of the applicants' statutory rights justifying the extraordinary remedy imposed.

### Background

The Social Security Act, 42 U.S.C. § 401, *et seq.* (the Act), requires the Social Security Administration (SSA) to administer, *inter alia*, insurance programs providing for old age benefits (§ 401) and survivors benefits (§ 402). The object of these programs is to provide monthly retirement benefits to persons who have reached a specified age and worked a sufficient period of time to have attained an insured status, and to provide retirement or survivors benefits to specified dependents of such insured workers, 42 U.S.C. §§ 402, 414. In order for benefits to be received, an application must be filed with the SSA showing eligibility for the benefits. An initial eligibility deter-

mination is made by an examiner. If the initial decision is adverse to the applicant, the applicant may request a *de novo* reconsideration of the decision. If the reconsideration decision remains adverse, the applicant may request a hearing before an administrative law judge (ALJ). Finally, a request for review of an adverse hearing decision may be filed with the SSA Appeals Council, after which judicial review becomes available.

In recent years there have been long delays at each step of the appeals process.[1] Roland Wright, the named plaintiff in this suit, applied on September 1, 1972, for an increase in old age benefits to which he believed himself entitled on account of his deceased wife's prior participation in the Social Security program. His initial application was denied on November 6, 1972. He requested a reconsideration on May 2, 1973, which led to an affirmance of the denial on August 15, 1973. On February 2, 1974, he filed a request for a hearing. When no hearing was scheduled after 420 days despite repeated requests, plaintiff-appellee filed the present lawsuit on May 13, 1975, on behalf of himself and other similarly situated applicants within Region V. The complaint alleged that the SSA's failure to render each successive decision within a "reasonable time" violated the plaintiffs' rights under Title II of the Social Security Act, Sections 555 and 706 of the Administrative Procedure Act (APA), and the Due Process Clause of the Fifth

---

1. A 1976 nationwide sample of reconsideration decisions involving a reversal of the initial decision found that the median delay between initial decision and reversal was 74 days, with 35% of the sample cases taking over 90 days. The median delay between a request for a hearing and the holding thereof in 1975 was over 180 days, and the median time between the date of hearing and the issuance of a decision was again over 180 days. In the midwest region (Region V), the area covered by this class action, between 1970 and 1975, 58% of the denials on which hearings were held were reversed after the hearing; in 1975, the rate of reversal was 49%. The median delay in the midwest region between the request for an Appeals Council review of an adverse hearing decision and a ruling from that body was

slightly under 90 days for the 1970 to 1975 period. Of the 29 requests for review by the Appeals Council filed in the midwest region in 1975, 75% were reversed. Additional delays exist between the time that a denial of benefits is reversed and the time that the applicant begins receiving the benefits. According to an SSA nationwide sample, the average time from a favorable hearing decision to the issuance of an award notice to the applicant is 70.3 days.

The plaintiffs-appellees have not complained of inordinate delays between the time an application is filed and the time that an initial eligibility decision is rendered. The parties have stipulated that the reconsideration delays in the midwest region are not significantly different from the nationwide findings.

Amendment. The relief sought included a writ of mandamus ordering the SSA to process claims within specified maximum time limits at each stage of decision and review, and an order requiring the payment of benefits to any claimant whose request for a determination has been pending longer than those time limits. It was also suggested that the Secretary of the Department of Health, Education and Welfare has a duty under 42 U.S.C. § 1302 to promulgate regulations implementing these goals. Lastly, the complaint sought to overturn an SSA regulation, 20 C.F.R. § 404.968a(b), exempting from the coverage of Section 205(q) of the Act, 42 U.S.C. § 405(q), any claim in which a request for reconsideration or administrative or judicial review is pending, on the ground that the regulation conflicts with the policies behind Section 205(q).

Granting the plaintiffs' motion for summary judgment, the district court accepted the plaintiffs' argument that the delays rampant throughout the Social Security system violated Title II of the Social Security Act and the APA and therefore found it unnecessary to consider the plaintiffs' constitutional claims. The court's order required the SSA to meet certain time limits to be phased in over a period of time, so that by January 1, 1979, all hearing decisions concerning Region V claims would be issued within 90 days of a request for a hearing. Further, all Appeals Council decisions would be issued within 90 days from the date of request for review. In all cases in which the specified time limits were not met, interim benefit payments were to be made to the applicant, subject to recoupment by the SSA should the applicant eventually be found ineligible. The Secretary was instructed to promulgate regulations implementing those provisions and was enjoined from applying 20 C.F.R. § 404.-968a(b)(2) to Region V applicants.

The Secretary appeals the district court's decision on a number of grounds: (1) the court lacked subject matter jurisdiction; (2) the court erred in certifying the suit as a class action; (3) there were no statutory or constitutional violations justifying the issuance of a writ of mandamus; (4) the court erred in requiring interim payments of benefits, and; (5) the court erred in setting aside 20 C.F.R. § 404.968a(b). The plaintiffs cross-appeal on the grounds that the court erred in allowing the government to recoup interim payments should an applicant eventually be found to have been ineligible. This court has jurisdiction over these appeals under 28 U.S.C. § 1291.

### Jurisdiction

■■■ The complaint alleged jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, the federal question statute, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, and Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). We conclude that the district court had jurisdiction under Section 205(g)[2] and do not consider the other sections. *See Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978); *Mattern v. Mathews*, 582 F.2d 248 (3d Cir. 1978); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333 (3d Cir. 1977). The Secretary's principal objection to finding jurisdiction under Section 205(g) is that at the time this suit was instigated there had been no "final decision" on the plaintiffs' claims as required by the statute. However, in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court distinguished between a waivable element of the jurisdictional requirements of Section 205(g) and a non-waivable element. The non-waivable element is the filing of an application for benefits, which was properly alleged in the case at bar. The waivable element is the "requirement that administrative remedies prescribed by the Secretary be exhausted."

2. 42 U.S.C. § 405(g) provides in pertinent part:
(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .

*Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *see also Jimenez v. Mathews,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). In *Eldridge* the Court characterized the plaintiff's asserted right to a due process hearing before his disability benefits could be terminated as being "entirely collateral to his substantive claim of entitlement" and found it to be a case "where [the] claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate."[3] 424 U.S. at 330, 96 S.Ct. at 900. With regard to its findings of waiver in *Eldridge* and *Salfi,* the Court in *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977), stated:

> In both instances . . . the claimants challenged the Secretary's decisions on constitutional grounds. Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. Furthermore, since federal-question jurisdiction under 28 U.S.C. § 1331 is precluded by § 205(h), *Weinberger v. Salfi, supra,* at 761 [95 S.Ct. 2457], a decision denying § 205(g) jurisdiction in *Salfi* or *Eldridge* would effectively have closed the federal forum to the adjudication of colorable constitutional claims. Thus those cases merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by " 'clear and convincing' " evidence. 422 U.S., at 762 [95 S.Ct. 2457]; *Johnson v. Robinson,* 415 U.S. 361, 366–367 [94 S.Ct. 1160, 39 L.Ed.2d 389] (1974).

Under these principles, we believe that the district court clearly had jurisdiction over the plaintiffs' constitutional claims under Section 205(g), since the complaint raised colorable claims that the delays in receiving a hearing or review violated the plaintiffs' due process rights and that the deprivation would only be aggravated by further delay. Although the situation with respect to the plaintiffs' claims that the Social Security Act and APA require the SSA to act within a "reasonable time" is less clear, we believe that they also fall within the district court's Section 205(g) jurisdiction. Statutory claims such as these are both colorable and collateral, and the plaintiffs may suffer irreparable harm if judicial review is postponed. Delay in judicial review may even effectively "close the federal forum" to these claims. It must be conceded that the Secretary has an interest in interpreting the "reasonable time" requirement of the Social Security Act that is not present in a case involving only constitutional claims. The Secretary is required by 42 U.S.C. § 1302 to promulgate regulations for "the efficient administration of the functions with which [he] is charged under [the Act]." Yet the Secretary's interest in plaintiffs' statutory claims remains "unsuited to resolution in administrative *hearing* procedures." *Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. at 986 (emphasis added). We conclude that it should be seen more as a consideration affecting the desirability of judicial intervention in the administrative process on the merits of a particular case, rather than an absolute preclusion of federal jurisdiction over the plaintiffs' claims.

**3.** In a footnote the Court stated:

Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. The role these factors may play is illustrated by the intensely "practical" approach which the Court has adopted . . . when applying the finality requirements of 28 U.S.C. § 1291 . . .

and 28 U.S.C. § 1257 . . . . To be sure, certain of the policy considerations implicated in §§ 1257 and 1291 cases are different from those that are relevant here. . . . But the core principle that statutorily created finality requirements *should, if possible,* be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable. 424 U.S. at 331 n.11, 96 S.Ct. at 901.

■ We also reject the Secretary's argument that the plaintiffs' statutory claims are not collateral to their substantive claims of entitlement for benefits, since they seek payment of interim benefits when administrative delay exceeds certain time limits. It is clear that this "presumptive eligibility" is not grounded in any explicit statutory requirement, since the provisions of 42 U.S.C. § 405(q) are not applicable here.[4] Instead "presumptive eligibility" can only be invoked as a judicial remedy for a violation of another statutory provision or the Due Process Clause. The existence of this prayer for relief does not justify the exhaustion of administrative remedies not otherwise justifiable.

### The Class Certification Issue

■ In the district court the Secretary opposed certification of the class only on the ground that class actions could not be maintained in Title II Social Security cases. The court properly rejected this argument. *See, e. g., Jimenez v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). For the first time on appeal the Secretary raises two additional arguments as to why class certification was improper. However, "It is well settled, that a litigant may not seek reversal by this Court on a ground not presented to the district court for consideration." *King v. Stevenson,* 445 F.2d 565, 570–71 (7th Cir. 1971). In any event, we find the Secretary's argument to be without merit.

The Secretary first contends that the requirement under Fed.R.Civ.P. 23(a)(2) that common questions of law and fact exist among the class members was not met because of the many variables that affect the amount of delay in a particular case. However, as the Second Circuit stated in reject-

ing a similar argument in *White v. Mathews:*

> plaintiffs all seek social security . . . benefits through the identical administrative process, all have requested hearings after initial adverse rulings, and all have endured long delays before hearing.

559 F.2d 852, 858 (2d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Moreover, no individualization is necessitated by the relief which the plaintiffs seek.

The Secretary's second argument is that the named plaintiff's claim was not representative of those of the class, in that he had already received a hearing and Appeals Council decision before the class was certified rendering his claim moot. However, Wright's claim was not moot at the outset of the suit and for the reasons stated by the Second Circuit in *White,* 559 F.2d at 857, we believe that the class certification should be seen as "relating back" to that point in time. *See also Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Doe v. Munday,* 514 F.2d 1179 (7th Cir. 1975). Wright's claim was likely to become moot at any moment, making evasion of review a real possibility. Moreover, no fault is found with the quality of representation of the class, and the controversy with regard to the class as a whole remains unresolved.

### The Statutory Claims

The district court found that the Social Security Act and the APA require the SSA to provide hearings and Appeals Council reviews within a "reasonable time" and that the current delays violate that duty. *Accord, White v. Mathews, supra; Caswell v. Califano, supra.*[5] In support of this determination plaintiffs point to Section 205(b) of the Social Security Act, 42 U.S.C.

---

**4.** Section 405(q) requires that the Secretary determine that a *prima facie* case for eligibility exists, whereas here all relevant administrative determinations have been to the contrary.

**5.** Additional cases supportive of plaintiffs' position are: *Etter v. Califano,* No. 77–0520 (N.D. Cal. Mar. 6, 1978), *appeal docketed,* No. 78–2660, 78–2662 (9th Cir. Sept. 25, 1978); *Mar-*

tinez v. Califano, No. 73 C 900 (E.D.N.Y. Jan. 3, 1978), *appeal docketed,* No. 78——— (2d Cir. July 3, 1978); *Sturgill v. Mathews,* No. 75–288 (E.D.Ky. Sept. 17, 1975). It should be noted, however, that these cases involved the Social Security disability program under Title II and not the retirement and survivors benefits which are at issue here.

§ 405(b), which requires the Secretary "to make . . . decisions as to the rights of any individual applying for a payment" and to give "reasonable notice and opportunity for a hearing with respect to such decision." It is suggested that the opportunity for a hearing means a hearing at a "meaningful and reasonable time." Plaintiffs point to parts of the legislative history of the Act emphasizing the financial dependence of beneficiaries on their social security payments and stating that "assurance of prompt payment is vital to their financial well-being." S.Rep.No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S. Code Cong. & Admin.News 2834, 2941. *See also Administrative Procedure in Government Agencies*, S.Doc.No. 10, 77th Cong., 1st Sess., Vol. III (1942), App. at 37. Plaintiffs find additional support in the fact that 42 U.S.C. § 1302 requires the Secretary to make rules and regulations for the "efficient administration of the functions with which [he] is charged." Section 555(b) requires that:

> With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time, each agency shall proceed to conclude a matter presented to it.*

5 U.S.C. § 555(b) (emphasis added). *See Deering-Milliken, Inc. v. Johnston*, 295 F.2d 856, 863–64 (4th Cir. 1961). Reference is also made to a statement in the legislative history concerning Section 555(e) of the APA [6] to the effect that:

> This subsection affords the parties in any agency proceeding, whether or not formal or upon hearing, the *right to prompt action upon their requests*, immediate notice of such action, and a statement of the actual grounds thereof.

S.Rep.No. 752, 78th Cong., 2d Sess. 206 (1945) (emphasis added). In light of these provisions we agree with the district court's conclusion that the SSA is under a statutory duty to provide hearings and Appeals Council reviews within a "reasonable time." The problem is to give content to the word "reasonable" in the circumstances before us.

The plaintiffs' interest in receiving prompt action on their requests for a hearing or an Appeals Council review is beyond dispute. Although there have been multiple administrative determinations of ineligibility for benefits in each case, these unsuccessful applicants have a statutory right to seek a reversal of those decisions. The desirability of dispatch in providing hearings and reviews is accentuated by the high rates of reversal experienced in cases appealed in the past.[7] We are not unsympathetic to the deprivations that the delays in receiving old age and survivors benefits can cause [8] and readily agree that such delays may undercut the purposes of the Act. Nor can they be fully compensated for by the provision of retroactive benefits when eligibility eventually may be found to have existed. The court below, as well as the Second Circuit in *Barnett v. Califano* (2d Cir. 1978), and the First Circuit in *Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978), seem to have focused primarily on the importance of this injury to the plaintiffs' interests in finding that the delays in providing hearings and reviews are "unreasonable" under the Act and the APA. However, we believe that the "reasonableness" of the delays must be judged in a broader context.

---

**6.** 5 U.S.C. § 555(e) provides:

> Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding.

**7.** The significance of the high percentages of reversals in cases "appealed" should not be overstated. If the number of reversals were expressed as a percentage of all denials rather than of only those appealed, the numbers would undoubtedly be much lower, in that cases where the applicant feels that reversal is likely are more likely to be appealed than less promising cases. Moreover, given the *de novo* nature of "appeals" with the opportunity for the introduction of new evidence, a reversal on appeal does not necessarily indicate that the prior decision was wrong in terms of the evidence then available.

**8.** The applicant's interest in receiving such payments may be somewhat less than in the case of welfare benefits, which are based directly on need. Yet the interest remains strong.

Firstly, although Congress has imposed a duty on the SSA to process claims within a "reasonable" time, the timing of hearings has been left to agency discretion. Congress has continued to eschew the imposition of mandatory time limits in spite of proposals to do so. *See, e. g.,* H.R. 5296, 94th Cong. (1975). When making provision for the payment of interim benefits in 42 U.S.C. § 405(q), Congress drew the requirements so narrowly as to make that section inapplicable here. Moreover, the legislative history of that section demonstrates that in addition to its desire to insure the speedy payment of benefits to eligible applicants, Congress was also concerned with maintaining the quality of administrative adjudication and minimizing the payment of benefits to ineligible applicants.[9] S.Rep.No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin.News 2834, 2941–42. Congress has continually monitored the appeals crisis in the Social Security system through hearings[10] and has passed legislation designed to ameliorate the situation by granting the SSA greater flexibility in the use of administrative law judges and by increasing their number,[11] although these measures have so far proven inadequate.

■ Secondly, the "unreasonableness" of administrative delay may take a variety of forms. *See generally* Goldman, *Administrative Delay and Judicial Relief,* 66 Mich.L. Rev. 1423 (1968). For example, there may be concern when an agency delays action in a particular case for a period of time greatly disproportionate to the amount of time normally required in similar cases or when there are other indications of a lack of evenhandedness or a dilatory attitude on the part of the agency. *See* Goldman, *supra* at 1425; *F.T.C. v. J. Weingarten, Inc.,* 336 F.2d 687, 691–92 (5th Cir. 1964); *Deer-*

*ing-Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1961); *Safir v. Gibson,* 417 F.2d 972 (2d Cir. 1969); and *American Broadcasting Co. v. FCC,* 89 U.S.App.D.C. 298, 191 F.2d 492 (1951). However, as the Fifth Circuit noted in *Weingarten* :

> Absent proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the Commission or its staff . . . we are unable to say that a Judge can so hold. . . . [W]e think it would be the extremely rare case where a Court would be justified in holding . . . that the passage of time and nothing more presents a occasion for the peremptory intervention of an outside Court in the conduct of an agency's adjudicative proceedings.

336 F.2d at 691–92. The Supreme Court has also cautioned courts against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). In this case the plaintiffs complain of systemwide delays affecting nearly all applicants asking for a hearing of Appeals Council review. We believe that it would be an extremely rare case where a district court would be justified in intervening in the administrative process because of delays of this sort, absent a violation of the Due Process Clause. As Professor Goldman stated:

> [When presented with the question of whether an agency] is acting with appropriate dispatch in all of its . . . cases . . . [i]n most cases a court would not be competent to make such a

---

9. A staff study of the House Subcommittee on Social Security stated that:

> The appeals crisis is almost wholly the creature of the Social Security and SSI disability programs and *although mandating by statute certain processing time limits might seem on the surface a desirable thing to do, such legislation might also have an adverse effect on the quality and uniformity of disability adjudication which is already somewhat suspect.*

*Final Report Study of the Social Security Hearing System October 1977* (emphasis added).

10. *See, e. g., Hearings Before the Subcomm. on Social Security Appeals, Subcomm. on Social Security of the House Comm. on Ways and Means,* 94th Cong., 1st Sess. (1975).

11. *See* P.L. 94–202.

decision. While it might be argued that a workable test could be based upon the normal time required by this agency or other agencies to process similar cases, it is unlikely that a court could evolve viable standards to determine the appropriate length of time for any particular administrative action. The court would have to work with a relative standard such as "reasonable dispatch" rather than making an essentially legislative judgment that a particular administrative practice should take no longer than a specified period of time. However, a "reasonable dispatch" standard is not likely to be susceptible to reasoned elaboration: the large number of potentially relevant factors and the difficulty of assessing the relative importance of each variable seem to preclude effective adjudication.

Goldman, *supra* at 1429.[12] Here the plaintiffs have not attempted to controvert the Secretary's contention that the delays that have been experienced throughout the Social Security system are the result of a tremendous explosion in the number of claims that have had to be processed, including a one-time wave of claims for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901, *et seq.* It is recognized as well that there are limitations on the amount of resources that the SSA has been able to bring to bear on the problem. Although the plaintiffs rely in part on the fact that the Secretary has a duty to promulgate regula-

tions for the "efficient administration" of his functions, there are no allegations of specific inefficiencies or suggestions of obvious ways in which the SSA could increase its productivity under present resource constraints. Another regulation cannot be expected to solve the problem. Nor do the plaintiffs contest the fact that the SSA has made good faith efforts to increase its efficiency and has made progress in increasing the productivity of the hearing officers.[13]

 Congress has committed the timing of hearings and reviews to the discretion of the SSA. It has continually monitored the appeals delay problem; yet it has failed to prescribe mandatory time limits, interim benefit payments or other funding. Congress is not a party in this case. In these circumstances, we believe the courts should be hesitant to require such measures absent a due process violation or clear violation of congressional intent. In addition, since the delays complained of are system-wide and there are no allegations of bad faith, a dilatory attitude, or a lack of even-handedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed "reasonable dispatch" duty must be judged in the light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests. Since administrative efficiency is not a subject particularly suited to judicial evaluation, the courts should be reluctant to intervene in the administra-

12. *See also* Note, *Judicial Acceleration of the Administrative: The Right to Relief from Unduly Protracted Proceedings,* 72 Yale L.J. 574–75 (1963):

> [M]any instances of delay, regardless of its effect on the parties, are not susceptible to judicial solution. Thus, for instance, crowded dockets resulting from inadequate appropriations and a lack of personnel demand solutions uniquely available to the Congress or the agencies themselves. Courts may, however, deal with certain causes of delay by enjoining or requiring an administrative decision. Thus, courts can be responsive to the excessive admission of evidence in a particular case or to judicial relief from the burdens of delay, whatever the cause of such delay, necessarily presupposes intervention in ad-

ministrative proceedings before the administrative process has fully run its course.

13. However, the plaintiffs do attempt to hold the Secretary to certain overly optimistic predictions made by him to Congress in 1975, concerning the degree to which delays could be reduced by 1977. *See Delays in Social Security Appeals: Hearings Before the Subcomm. on Social Security of the House Comm. on Ways and Means,* 94th Cong., 1st Sess. 74 (1975), cited in *White v. Mathews,* 559 F.2d at 860 n. 10. It seems more likely that the Secretary's expressed goal of a 90-day waiting period was meant as a norm rather than an outside limit. Additionally, counsel for the Secretary stated in oral argument that the goal has since been repudiated.

tive adjudication process, absent clear congressional guidelines or a threat to a constitutional interest.[14] Here, given the good faith efforts of the SSA to cope with the delay problem under severe resource constraints and the prospect of future progress in the reduction of processing times, we do not believe that the present delays are so unreasonable as to justify, no matter how well-intentioned, the district court's resort to its extraordinary equitable powers to impose mandatory time limits and presumptive eligibility. We therefore refuse to follow the lead of our sister circuits in *White, Barnett* and *Caswell*.[15]

### The Due Process Claim

■ It was not necessary for the district court, as it is for us, to reach the issue of whether the delays are violations of due process. In the circumstances of this case, we hold they are not.

■ Delay in administrative review providing for the correction of errors made in initial eligibility determinations is a significant factor in assessing the sufficiency of the process. It has been so held in a case involving unemployment benefits. *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975). Delay is a factor but not the only factor. In determining when due process is no longer due process because past due, the influence of other significant circumstances is not to be ignored.

In *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the Court considered the effect of an amendment on the old age benefits of an alien previously determined to be eligible, but who thereafter was deported and his benefits terminated. The termination was held not to consti-

tute a constitutional violation. The Court explained that "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands." *Id.* at 610, 80 S.Ct. at 1372. The Court concluded that "a person covered by the Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause of the Fifth Amendment." *Id.* at 611, 80 S.Ct. at 1373. However, as that language suggests, there is due process protection. The interest of a covered individual is found to be of sufficient substance to be entitled to due process protection from arbitrary government action.

The present record does not establish that the delays are arbitrary or the result of some other inexcusable circumstance. We see no need to further document the burgeoning case load and limited staff problems or set forth SSA attempts to provide a remedy as they are generally well-known.[16] In spite of its good faith continuing efforts, the service, though progressing, has been unable for a variety of reasons to keep current with its heavy expanding docket in this unique, widespread and complex situation.

The present case might be considered to be somewhat less compelling than *Nestor* since we are examining not termination of eligibility but appeals by applicants who have already been found ineligible at one or more levels of reconsideration or review. We do not stress that distinction, however, as denials do not necessarily deserve less due process than terminations. *Barnett v. Lindsay*, 319 F.Supp. 610 (D.Utah 1970).

14. Were we convinced that a judicial fiat was the required or even desirable remedy to expedite crowded dockets to achieve more timely justice, we might more appropriately experiment with it upon ourselves.

15. It may be suggested that lest we join the other circuits which have taken a contrary view the claimants in this circuit will suffer even greater delays as resources will be shifted from this circuit in an attempt to satisfy the rigid requirements of the demanding circuits.

We decline to decide this case on that basis, but if necessary may consider any such development another day if our decision results in prejudice to the claimants in this circuit.

16. In *White v. Mathews*, 434 F.Supp. 1252, 1256–57 (D.Conn.1976), *aff'd*, 559 F.2d 852 (2d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), and *Caswell v. Califano, supra*, some similar continuing SSA difficulties are outlined.

Neither are we overly impressed with the statistics, though relevant, which are claimed to demonstrate a high rate of reversals of prior ineligibility findings. The Court cautioned in *Mathews v. Eldridge*, 424 U.S. 319, 346, 96 S.Ct. 893, 908, 47 L.Ed.2d 18 (1976), that "[b]are statistics rarely provide a satisfactory measure of the fairness of a decisionmaking process." We do not believe the reversal statistics are sufficient in these particular circumstances to change the constitutional complexion of the delays. Successful applicants for whom need is not a criterion are awarded retroactive benefits so that the effects of delay may be somewhat assuaged.

*Eldridge* offers additional guidance. It examined the due process requirements of terminations of social security benefits payable to workers during periods of total disability and held that a prior termination hearing was not required to comport with due process. It was perceived that the delays exceeding one year between the cutoff of benefits and final hearing could impose significant hardships upon physically disabled workers finally determined to be erroneously terminated. "Still," the Court said, "the disabled worker's need is likely to be less than that of a welfare recipient." *Id.* at 342, 96 S.Ct. at 906. It was noted that disability benefits were not based on need. *Eldridge* distinguished *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which held that due process required an adequate hearing before termination of welfare benefits. The nature and purposes of the payments in each case, disability in one and welfare in the other, were in part determinative. Speaking of the welfare recipient, the *Eldridge* Court noted that a crucial factor in *Goldberg* was "that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources his situation becomes immediately desperate." 424 U.S. at 340, 96 S.Ct. at 905. As in *Nestor* and in contrast with the welfare recipient in *Goldberg*, the survivors benefits in the present case are not determined by the applicant's need.

The named plaintiff, for example, is already receiving some benefits, but seeks an increase based upon his deceased wife's participation in the program for which he has already been found ineligible on two occasions.

*Eldridge* does not deny that a statutorily created "property" interest protected by the Fifth Amendment exists in the continued receipt of total disability benefits, 424 U.S. at 332, 96 S.Ct. at 902–03, but goes on to explain:

These decisions underscore the truism that " '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett v. Kennedy*, *supra*, [416 U.S.] at 167–168 [94 S.Ct. 1633, 40 L.Ed.2d 15] (Powell, J., concurring in part); *Goldberg v. Kelly, supra*, [397 U.S.] at 263–266 [90 S.Ct. 1011]; *Cafeteria Workers v. McElroy, supra*, [367 U.S.] at 895 [81 S.Ct. 1743]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, *e. g., Goldberg v. Kelly, supra*, 397 U.S. at 263–271, 90 S.Ct. 1011.

■ Borrowing those factors from that disability case for application to our present survivors benefits case satisfies us that in the name of due process as a flexible standard, we are not justified in sanctioning the imposition of unrealistic and arbitrary time limitations on an agency which for good faith and unarbitrary reasons has amply demonstrated its present inability to comply. Plaintiff argues the social security "system must be fair—and it must work." *Richardson v. Perales*, 402 U.S. 389, 397, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). So it must and perhaps it does reasonably well except it does not work as quickly as we would like. In *Perales* the due process procedural issue was the use of hearsay in a disability case hearing which precluded cross-examination. In approving the practice the Court took note of the realistic aspects of the magnitude of the administrative burden which, although not controlling, could not be ignored: "The system's administrative structure and procedures, with essential determinations numbering into the millions, are of a size and extent difficult to comprehend." 402 U.S. at 399, 91 S.Ct. at 1426.

The plaintiff, as did the court in *Perez v. Lavine*, 378 F.Supp. 1390 (S.D.N.Y.1974), finds some support in *Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926). However, in *Smith* the Court noted that the delay of the commission in considering utility rates for two years without offering any reason or excuse suggested a lack of any intention to proceed. We note also that retroactive benefits were not involved. *Smith* is therefore not helpful. There may be, of course, in the more typical situation unjustified and unreasonable administrative delays constituting a deprivation of property in violation of due process requiring our intervention, but we do not see the present case in that light. *Custom v. Trainor*, 74 F.R.D. 409 (N.D.Ill. 1977); *Alexander v. Silverman*, 356 F.Supp. 1179 (E.D.Wis.1973).

■ Nor is the solution to be found in a contract theory. An expectation of public benefits does not confer a contractual right to receive the hoped for benefits. *Richardson v. Belcher*, 404 U.S. 78, 80, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

If all well-intentioned circuits, as some have, rush to protect their own claimants from delay, as we, although believing ourselves to be as well-intentioned, decline to do, we would anticipate that soon all would again be equal in delays and the same problem would remain but after much judicial disruption. In view of the reasons for delay, nationwide in scope, not individualized, and the nature of the particular benefits, a judicial fiat cannot help the SSA or claimants. Although judicial intervention may be required at some point, the solution must come from the SSA itself with the assistance of the Congress. Neither the Congress nor the agency has been unmindful of this complex problem. To impose on the SSA the crash review program sought by plaintiffs could be expected to result in a deterioration of the quality of the review, and possibly more injustice to claimants than justice. Speed cannot be an end in itself. There is even the prospect that some ineligible applicants might seek full review, additional hearings and resultant delays, for even frivolous claims benefit in the meantime undeservedly from the court-imposed interim payments with the expectation of avoiding later recoupment by the government after final adverse determination.

### Other Issues

■ The district court found that the Secretary had violated its duty to establish regulations and procedures to enforce a standard of promptness under 42 U.S.C. § 1302. Therefore, the district court ordered that the Secretary promulgate regulations to carry out the court's imposed time schedule. In view of our holding in this case, that portion of the order likewise becomes ineffective.

■ The district court also enjoined the Secretary from applying his regulation, 20 C.F.R. § 404.968a(b)(2), insofar as that regulation precluded the application of 42 U.S.C. § 405(q), referred to as the expedited

benefit payments process, to claims pending on reconsideration, hearing or Appeals Council Review. That provision provides for expedited benefit payments under limited circumstances. We also resolve this issue differently. The statute on its face provides an expedited payments exception only if the Secretary "finds that benefits are due." In the present case the Secretary has found quite the contrary, at least in the initial and first stages of review. The legislative history also suggests that even if the claimant has made a *prima facie* case of eligibility, the Secretary must keep erroneous benefit payments to a minimum. An exception is made in certain circumstances on a "preliminary basis." The review and appellate procedures we are considering are not within the meaning of "preliminary." S.Rep.No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin.News 2834, 2941, stated:

> It is important, however, that the Secretary should not be forced into making doubtful payments merely because of the passage of time; therefore, under the bill the individual must have supplied all evidence requested, and the Secretary must be confident of the validity of the claim, before an expedited payment can be made on the basis of a request for payment under the new provisions.

### Conclusion

Although the district court judge has support elsewhere for his views in his commendable desire to improve the administration of the program, we, on balance, believe that we must take a contrary view on the substantive issues.[17]

REVERSED.

---

**17.** This opinion has been circulated among all judges of this court in regular active service. A majority did not favor rehearing *in banc*.