**SPARKS NUGGET, INC., dba John Ascuaga's Nugget, Plaintiff,**

v.

**James S. SCOTT, Regional Director, Region 32, et al., Defendants.**

**No. CV–R–83–362–ECR.**

United States District Court, D. Nevada.

Jan. 16, 1984.

Opinion After Rehearing May 8, 1984.

As Amended May 8, 1984.

William W. Wertz, San Francisco, Cal. and Peter D. Laxalt, Reno, Nev., for plaintiff.

Paul E. Eggert, Regional Atty., N.L.R.B., Oakland, Cal., and Paul E. Bateman, Margery E. Lieber, Deputy Asst. Gen. Counsel for Sp. Litigation, N.L.R.B., Washington, D.C., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

### INTRODUCTION

On October 11, 1983, the petitioner filed a petition seeking a writ of mandamus and an injunction. The writ of mandamus sought would require respondent National Labor Relations Board (Board) to investigate and process election petitions filed by petitioner and one of its employees.[1] The injunction sought would restrain further proceedings in respect to two pending Unfair Labor Practice (ULP) proceedings on the ground that there has been excessive delay in processing the ULPs and that the

---

1. The petitions seek an election which petitioners apparently believe will result in the decertification of the union which serves as bargaining agent for petitioner's employees.

Board is therefore acting in excess of its authority in processing them further.[2]

The Board in turn has filed a motion to dismiss these proceedings, contending that this Court has no jurisdiction to review the actions of the Board because such jurisdiction lies with the courts of appeals rather than the district courts.

## BACKGROUND

On June 21, 1982, petitioner filed a petition with the Board, seeking a representation election among bar and culinary workers. On June 29, 1982, an employee of petitioner filed a statement signed by 500 of petitioner's employees, also asking for an election.

Shortly before the first election petition was filed, however, a union representing petitioner's bar and culinary employees had filed an Unfair Labor Practice charge with the Board, claiming that petitioner had refused to bargain in good faith. This petition was filed on June 10, 1982. On June 29, 1982, the union filed a second ULP, claiming that petitioner had engaged in coercive conduct.[3] On June 30, 1982, the Board's Regional Director advised petitioner that the election petition would not be processed pending the resolution of the ULPs.[4] This action was taken pursuant to

the Board's "Blocking Charge Practice" (or "Blocking Charge Rule"), whereby the Board ordinarily will not conduct an election during the pendency of unwaived unfair labor practice charges involving employees in the bargaining unit in which an election is sought.[5]

On March 31, 1983, the Regional Director issued a complaint on the ULPs. Pursuant to stipulation, a hearing on the ULPs was continued from June 13, 1983, to October 17, 1983. An Administrative law judge has conducted approximately eight days of hearings on the ULPs, and the matter is now under submission.

On October 11, 1983, the petition herein was filed with this Court. On October 14, 1983, this Court ordered the Board to show cause why a mandate should not be issued requiring the NLRB to exercise its discretion to decide the certification petitions and the pending ULPs, and why an injunction should not be issued requiring the NLRB to terminate the ULP proceedings.

Finally, on November 9, 1983, the Board denied petitioner's request that the Board order the processing of the election petitions.[6] The denial occurred as a result of a 2–2 vote by the Board on the issue of whether the Blocking Charge Practice was being properly applied in this case. All

**2.** Petitioner's last minute contention that the ULP charges should be subject to the "two-dismissal" rule under Fed.R.Civ.P. 41(a)(1) is not worthy of extended analysis. It is sufficient, for the purposes of this Order, to note that "[a] charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit." *National Labor Relations Board v. Fant Milling Co.,* 360 U.S. 301, 307, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243 (1959).

**3.** On August 17, 1982, an employee of petitioner filed an Unfair Labor Practice charge with the Board, claiming that she had been subject to illegal discrimination. This charge has been settled.

**4.** On September 3, 1982, the Regional Office sent a letter to petitioner indicating that it was recommending contempt proceedings for failure to comply with the enforcement order issued in the case of *N.L.R.B. v. Silver Spur Casino,* 623 F.2d 571 (9th Cir.1980), *cert. denied* 451

U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). The Regional Office advised petitioner at that time it was suspending action on the ULPs pending a decision on determination whether contempt proceedings should be brought. While the record is unclear, it appears that for some reason the proposed contempt proceedings were abandoned or that the NLRB never got around to doing anything about them.

**5.** Annot., 18 ALR Fed. 420, 425 (1974). The Blocking Charge Practice is necessary because an election held during the pendency of unfair labor practice charges would be tainted if the charges were found to be true, since the employer's conduct may have so affected employee attitudes as to make a fair election impossible. *See Bishop v. N.L.R.B.,* 502 F.2d 1024 at 1029.

**6.** Petitioner originally requested that the Board process the election petitions on March 18, 1983. This request was denied. The Board's action on November 9 was taken pursuant to a renewal of this request.

four[7] members of the Board concluded that there has been a delay that is longer than desirable in the processing of the ULPs. The dissenters stated that the delay was unconscionable while the other two members of the Board felt that while the delay is longer than desirable, it was not unconscionable. Since a majority of the Board did not find that an exception to the Blocking Charge Practice was warranted, the tie vote in effect affirmed the actions of the Regional Director and thereby maintained the status quo.

## ANALYSIS

### Jurisdiction

■ Before this Court can intervene in Board proceedings, it must have subject matter jurisdiction. Where the Board has issued an order or made a decision in either a representation proceeding or an unfair labor practice proceeding, the National Labor Relations Act provides for review in the United States Courts of Appeals, and not in the United States District Courts. See Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local 690 v. N.L.R.B., 375 F.2d 966, 968–69 (9th Cir.1967).[8] The rule stated in Teamsters, however, does not apply to the present case. The Board has not acted, and there is therefore nothing to "review" in the traditional sense. There is no evidence that the Board's failure to act is based on a discretionary judgment on its part that delay in hearing and

concluding the ULP proceedings in this case would in some way further the purposes of the National Labor Relations Act. Since the National Labor Relations Act does not speak to the issue of jurisdiction in this type of case, these proceedings are governed by general jurisdictional statutes.

### 28 U.S.C. § 1337

■ 28 U.S.C. § 1337 is such a statute. It provides in part:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce ....

A district court has jurisdiction under § 1337 to invalidate Board action in excess of its delegated powers. Leedom v. Kyne, 358 U.S. 184, 190, 79 S.Ct. 180, 184–85, 3 L.Ed.2d 210 (1958). We recognize that the Leedom v. Kyne doctrine has been restricted in order to prevent direct judicial review of agency orders in areas that are committed to the agency's discretion. See, e.g., Baker v. International Alliance of Theatrical Stage Employees, 691 F.2d 1291, 1294 (9th Cir.1982). In the present case, however, petitioner has claimed that the Board has failed to perform a mandatory obligation to process its representation petitions. If petitioner's claim is valid, the Board's failure to act would constitute conduct in excess of its delegated powers, and would bring the Board within the Court's jurisdiction under Leedom v. Kyne.[9]

7. One of the five seats on the Board is vacant at the present time.

8. Specifically,
    [w]hen final orders of the Board, entered at the culmination of an unfair labor practice proceeding ... are reviewed in the Court of Appeals, [the Act] provides for judicial review in that Court of the underlying determination in the representation proceeding.
    Teamsters, 375 F.2d at 968–69.

9. In Leedom v. Kyne, the Board was found to have violated a negatively worded prohibition in the National Labor Relations Act. 358 U.S. at 186–87, 79 S.Ct. at 182–83. A literal reading of that case would therefore limit its application to cases in some type of affirmative conduct of the Board—such as an order or a decision—was

challenged. However, the existence of jurisdiction should not depend on whether a negative or affirmative prohibition has been violated. As the court stated in Miami Newspaper Printing Pressmen's Union v. McCulloch, 322 F.2d 993, 997 (D.C.Cir.1963):

We are unable to read the Court's decision in Leedom v. Kyne as limited to the negatively worded prohibition there involved. If, after the Board finds that a question of representation exists, and an election is held, the requirement that it "shall" certify the results is mandatory, then a failure to certify would be prohibited by the Act and in excess of the Board's powers. A party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition.

The same reasoning would of course apply to the Board's duty to investigate election petitions.

*28 U.S.C. § 1331*

■ 28 U.S.C. § 1331 is another general jurisdictional statute. It provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Under *Fay v. Douds*, 172 F.2d 720 (2d Cir.1949) and its progeny, a district court has jurisdiction to intervene in Board proceedings if there is a "clearly colorable" (or at least a "not transparently frivolous") claim of a violation of constitutional rights. *Id.* at 723; *McCormick v. Hirsch,* 460 F.Supp. 1337, 1347 (M.D.Pa.1978).[10] Since petitioner contends that the Board's delay has violated its due process rights, this Court has jurisdiction under § 1331.

We recognize that the *Fay v. Douds* doctrine is not universally applicable. The cases where the doctrine was not applied, however, have recognized that there is no "property right," in the Constitutional sense, that would entitle a party to a favorable Board decision on an issue committed to the agency's discretion. *See, e.g., Herald Co. v. Vincent,* 392 F.2d 354, 359 (2d Cir.1968). If the rule were otherwise, almost any agency decision theoretically would become subject to direct review, and agency procedures would be compromised.

In the present case, however, this Court could only intervene to compel the Board to exercise its discretion and reach a decision that either of the parties could appeal, if they wished to do so, through the normal appellate process. Thus, there is no danger in this case that the assumption by this Court of jurisdiction will infringe on a matter committed to the discretion of the National Labor Relations Board. While the Board is entitled to control of the schedul-

ing of matters to be heard before it, it has an overriding obligation to avoid unreasonable delays. Whether the Board has discharged this obligation in a manner consistent with the Due Process Clause of the United States Constitution is not an issue for the Board to decide. *See Public Utilities Commission v. United States,* 355 U.S. 534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958).

Having established the existence of its jurisdiction,[11] this Court must now decide whether the Board has exercised its discretion as required by law.

### *The Merits of Petitioner's Claims*
### *Duty to Investigate*

The duty to investigate election petitions is established by 29 U.S.C. § 159(c), which provides in part:

Whenever [an election] petition shall have been filed ... the Board *shall investigate* such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.... If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof. [Emphasis added.]

Petitioner claims that the Board has a mandatory duty under this statute to process the petitions to election. However, the statute provides only that the Board first investigate the petitions, and it need proceed further only if it "has reasonable cause to believe that a question of representation affecting interstate commerce exists." Therefore, this Court's inquiry will

---

**10.** Although *Fay v. Douds* involved a dispute between two unions, it was applied to an employer in a thoughtful opinion by Judge Irving Kaufman in *Worthington Pump & Machinery Co. v. Douds,* 97 F.Supp. 656, 660 (S.D.N.Y. 1951). The Fifth Circuit has indicated that it disagrees with *Worthington Pump, see Volney Felt Mills v. LeBus,* 196 F.2d 497, 498 (5th Cir. 1952), but its conclusion on that issue is devoid of analysis and we reject it here.

**11.** Since this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, we need not consider the issue of whether jurisdiction exists under the Administrative Procedures Act. *Cf. Andujar v. Weinberger,* 69 F.R.D. 690, 694, 695 (S.D.N.Y. 1976) (employing similar analysis in Social Security case).

be limited to the issue of whether the required investigation was conducted.

◼ While the statute requires that the Board conduct some type of investigation, the scope of the investigation required under § 159 is a matter that is committed to the discretion of the Board. *Newport News Shipbuilding & Dry Dock Co. v. N.L.R.B.*, 633 F.2d 1079, 1082 (4th Cir. 1980). Furthermore, the investigation need not take any particular form. *Modern Plastics Corp. v. McCulloch*, 400 F.2d 14, 18 (6th Cir.1968).

In the present case, the Board considered petitioner's motion to grant an exception to the blocking charge rules. It considered petitioner's contentions concerning the election petitions, and noted that trial had begun on a consolidated complaint "following the General Counsel's Determination that there is merit in many of the Union's allegations." By virtue of its tie vote, the Board decided that an exception to the blocking charge rules was not warranted. See Order, N.L.R.B. Case 32–RM–62 (Nov. 9, 1983) (filed as Exhibit 1 to Respondent's Motion to Dismiss). In a case involving similar issues, the Board stated that

> to find the existence of a real question concerning representation on the basis of the instant petition, in the face of the current litigation in the complaint case of the Employer's alleged refusal to bargain in good faith, would ... be contrary to the statutory scheme of the Act.

*Bishop v. N.L.R.B.*, 502 F.2d 1024, 1031 (5th Cir.1974) (*citing Big Three Industries, Inc.*, 201 N.L.R.B. No. 76, 82 L.R.R.M. 1411, 1412 (1973)). The Fifth Circuit has held that an investigation under § 159(c) is sufficient if it is determined that a non-frivolous Unfair Labor Practice charge has been made. If so, the Board "has thereby gathered sufficient operative facts to determine whether a representation question is actually presented." *N.L.R.B. v. Big Three Industries*, 497 F.2d 43, 54 (5th Cir. 1974).

◼ In view of the minimal standards that an investigation must meet under § 159(c), it cannot be said that the Board failed to conduct an investigation of the election petitions in this case. Nor can it be said that there has been a mechanistic application of the blocking charge rule in this case,[12] since the Board's Order of November 9 sets forth its reasons for not finding an exception. Since the Court finds that an adequate investigation was conducted, petitioner has no basis for relief on this issue. This Court has no jurisdiction to review the merits of the Board's determination that a question concerning representation did not exist in this case. *Grissom v. N.L.R.B.*, 364 F.Supp. 1151, 1153 (M.D.La.1973), *aff'd sub nom. N.L.R.B. v. Big Three Industries*, 497 F.2d 43 (5th Cir.1974).

*Duty to Process ULPs*

◼ As of October 14, 1983, this Court was of the opinion that the "NLRB [had] not acted expeditiously to process the unfair labor practice complaints." The National Labor Relations Act does not require the Board to process unfair labor practice charges within a certain period of time. *See N.L.R.B. v. Electric Vacuum Cleaner Co.*, 315 U.S. 685, 698, 62 S.Ct. 846, 852, 86 L.Ed. 1120 (1942) (Board need only handle unfair labor practice complaints "as quickly as is consistent with good administration.") Under the Constitution, however, due process must be accorded within a "meaningful time" if it is to be effective. *Orloff v. Cleland*, 708 F.2d 372, 379 (9th Cir.1983). Excessive delay by the Board in this case can result in prejudice to the petitioner just as effectively as if the issues raised in the ULP charges were resolved against it on the merits. The dilemma faced by petitioner is compounded by the fact that in the absence of a decision by the Board, it is powerless to take advantage of the normal statutory review procedure. This combination of uncertainty and delay is inconsistent with due process of law as required by the Constitution. *See Smith v. Illinois Bell*

12. *See Bishop v. N.L.R.B.*, 502 F.2d 1024, 1032     (5th Cir.1974).

*Telephone Co.*, 270 U.S. 587, 591, 46 S.Ct. 408, 409–10, 70 L.Ed. 747 (1926); *MCI Telecommunications Corp. v. F.C.C.*, 627 F.2d 322, 341 (D.C.Cir.1980).

During oral argument on December 27, 1983, the Court questioned counsel for the Board as to the reasons for the delay in processing the ULPs, and as to whether they would be resolved in the foreseeable future. Unfortunately, counsel lacked enough familiarity with this case to be able to provide the court with anything more than speculation on these issues. Under these circumstances, the Court cannot determine at this time whether it would be appropriate to compel the Board, under 28 U.S.C. § 1361, to reach a decision on the ULPs within a certain period of time.[13]

IT IS, THEREFORE, HEREBY ORDERED that this matter is set for hearing on Monday, March 26, 1984, at 9:30 o'clock a.m. in Courtroom No. 1 of the United States Courthouse, 300 Booth Street, Reno, Nevada, for the purpose of receiving evidence as to the status of the Unfair Labor Practice proceedings to which petitioner is a party. Counsel appearing for respondent shall be sufficiently familiar with the Unfair Labor Practice proceedings to be able to provide the Court with relevant information on this issue. At the time of the hearing the Court will consider the issue of whether a writ of mandamus should issue under 28 U.S.C. § 1361 to compel the Board to submit a schedule for completion of the Unfair Labor Practice proceedings.

IT IS FURTHER ORDERED that respondent's motion to dismiss is denied. The Court reserves ruling on the "Petition for Mandamus, Injunctive and Other Relief" herein, pending the further proceedings.

### Opinion After Hearing

In our Order of January 16, 1984 (Document No. 27), we ruled that we had jurisdiction pursuant to 28 U.S.C. §§ 1337 and 1331. While we found that respondent Na-

tional Labor Relations Board had conducted an adequate investigation of the election petitions involved in this case, *id.* at 83, we lacked sufficient information to make a decision as to whether the Board had met its duty to process the Unfair Labor Practice complaints within a constitutionally "meaningful time," *id.* at 83–84, particularly in view of the fact that the Board was either unable or unwilling to furnish the Court with any reasons for the Board's delay. *Id.* at 81 & 84. Accordingly, a hearing was held on March 26, 1984, in order to give the Board an opportunity to explain its reasons, if any, for its delay. *See id.* at 84. At that hearing, counsel appearing for the Board offered no information other than that his superiors had instructed him to say only that the matter was under submission before an Administrative Law Judge, and that it was still the Board's position that this Court lacked jurisdiction.

A federal agency such as the N.L.R.B. is not exempt from having to justify delays in its procedures. *See, e.g., Wright v. Califano*, 587 F.2d 345 (7th Cir.1978). The *Wright* court refrained from imposing time limitations on "an agency which for good faith and unarbitrary reasons has amply *demonstrated* its present ability to comply." *Id.* at 356 (emphasis added). In the present case, by contrast, it is apparent that counsel for the Board has made no effort to find out when the proceedings before the administrative law judge might be expected to conclude. While we of course have no quarrel with the Board's use of such judges in proceedings of this type, it is clear that the Board cannot shield itself from the duty to comply with the due process clause of the Constitution by claiming that the matter is in the hands of an administrative law judge.[1] In view of the recalcitrance of the Board on this issue, we have no choice but to retain jurisdiction.

---

13. *See Nader v. F.C.C.*, 520 F.2d 182, 207 (D.C. Cir.1975).

1. The Board's own regulations define an administrative law judge as "an agent of the Board ...." 29 C.F.R. § 102.6.

■ We also note that counsel for petitioner continues to assert that this Court has jurisdiction under the Administrative Procedure Act, which provides that "[t]he reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Theoretically, the application of § 706 does not require the finding of a constitutional violation. *See Wright v. Califano, supra*, 587 F.2d at 353 (Intervention under § 706 requires a showing of either "a due process violation *or* clear violation of congressional intent." (emphasis added)).

While in our previous order we declined to decide whether we had jurisdiction under the APA, it is apparent upon further consideration that we do not have such jurisdiction. Since jurisdiction to review decisions of the National Labor Relations Board is vested in the federal appellate courts under 29 U.S.C. § 160(f), this court cannot be a "reviewing court" within the meaning of 5 U.S.C. § 706.

■ 28 U.S.C. § 1331 confers jurisdiction on this Court to adjudicate "civil actions arising under the Constitution [or] laws ... of the United States." The Board is alleged to have violated 5 U.S.C. § 555(b), which provides that "each agency shall proceed to conclude a matter presented to it" within "a reasonable time." However, although § 555(b) is a "law of the United States," responsibility for its enforcement has been assigned to reviewing courts under § 706.[2] Accordingly, our § 1331 jurisdiction is limited to the issue of whether petitioner's constitutional rights have been violated as a result of the Board's inaction. Although it may well be that the inaction amounts to a "clear violation of congressional intent," we cannot grant relief to petitioner on that basis alone.

■ Finally, although we have concluded that the Board has not established sufficient grounds for dismissal of this action, we also find that there is as yet insufficient proof that a violation of petitioner's due process rights has occurred. At the March 26 hearing, counsel for petitioner stated that it would be "outrageous" if the administrative law judge had not issued a decision within six months after the case was submitted to him. It would be premature for this Court to conclude that a constitutional violation had occurred before that period had elapsed. Moreover, we note that even if a six-month period were to elapse without a decision from the administrative law judge, the passage of time and nothing more rarely "presents an occasion for the peremptory intervention of an outside Court in the conduct of an agency's adjudicative proceedings." *F.T.C. v. J. Weingarten, Inc.*, 336 F.2d 687, 692 (5th Cir.1964) *cert. denied* 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965).[3] Resolution of the issue of whether the administrative procedure provided here is constitutionally sufficient requires a much broader analysis. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (Court must weigh "the governmental and private interests that are affected.").[4] At

---

2. The Board has not argued that this Court's § 1331 jurisdiction is foreclosed by the fact that the federal appellate courts have been given jurisdiction to enforce 5 U.S.C. §§ 555(b) and 706 vis-a-vis the Board.

3. The district court in *Weingarten* had intervened on the basis of the agency's failure to comply with former § 6(a) of the Administrative Procedure Act, which required "reasonable dispatch" in the conclusion of any matter presented to the agency. A finding of "unreasonably delayed" action under the APA statutes now in effect (5 U.S.C. §§ 555(b) and 706) is the same as that for finding a constitutional violation on the basis of delay. *See Wright v. Califano*, 587 F.2d 345, 352 (7th Cir.1978).

4. *See also McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C.Cir.1968) *cert. denied* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969) ("[T]he showing that the Board has ... deprived a plaintiff of constitutional rights must be strong and clear."). While plaintiff's allegations of a constitutional violation were sufficient to invoke the jurisdiction of this Court, and are sufficient to maintain jurisdiction here in view of the Board's refusal thus far to do anything more than defend on jurisdictional grounds, a "stronger and clearer" showing than has been made thus far will be required before an ongoing administrative proceeding will be disrupted by this Court.

the present time, neither party to these proceedings has provided the Court with any information that would assist in evaluating the governmental interest involved here.

IT IS, THEREFORE, HEREBY ORDERED that the parties shall have until July 2, 1984, to submit documentary evidence concerning the status of the proceedings before the administrative law judge, and to submit argument concerning the legal issues described in the preceding paragraph of this Order.

IT IS FURTHER ORDERED that each party shall have until July 17, 1984, in which to submit evidence or memoranda in response to any submission made pursuant to the preceding paragraph of this Order. At that time, the Court will decide whether further hearing is required, or whether a writ of mandamus should issue under 28 U.S.C. § 1361.