Sandra L. GERMAIN, Jesus Gonzales, Jr., Faye A. Sieg, Milton Frankwick, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

RECHT–GOLDIN–SIEGEL PROPERTIES, Grant Park Square Apartments Co., North Meadows Apartments–No. 3, individually and on behalf of all other owners/managers similarly situated; Samuel R. Pierce, Jr., Secretary of the United States Department of Housing and Urban Development, Richard J. Franco, Milwaukee Area Manager of the United States Department of Housing and Urban Development, Defendants.

Civ. A. No. 81–C–472.

United States District Court, E.D. Wisconsin.

July 12, 1983.

---

Lynn M. Novotnak, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

Theodore Grossman, Dept. of Justice, Civ. Div., Washington, D.C., for defendants Pierce and Franco.

Carolyn Gnaedinger, Quarles & Brady, Milwaukee, Wis., for remaining defendants.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

Plaintiffs have filed a class action on behalf of all applicants for Section 8 housing in Wisconsin whose applications have been, are being, or will be denied by the private defendants to this action, in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The plaintiffs have moved for partial summary judgment, seeking declaratory and injunctive relief; the federal defendants have filed a cross-motion for summary judgment dismissing the complaint; and the private defendants have filed a motion to dismiss the complaint or in the alternative, for summary judgment. In addition, plaintiffs have filed a motion for a protective order regarding certain information appearing in the court record, and a motion to expand the class.

The plaintiffs seek declaratory and injunctive orders which would require that they receive certain substantive and procedural relief from the defendants:

"a. the right to receive an application for Section 8 housing upon request;

"b. the right to a prompt written determination of eligibility after submission of the application which is based on ascertainable admission standards;

"c. adequate written notice detailing rational, nonarbitrary reason(s) and spe-cific facts supporting a denial of eligibility;

"d. adequate written notice which advises a denied applicant of the right to a meaningful hearing opportunity with HUD staff, the procedure to follow to obtain a hearing, the rights which the applicant shall have at the hearing, and the availability of legal services;

"e. a promptly scheduled HUD administrative evidentiary hearing where:

"i. the applicant will have the opportunity to present oral and written evidence and arguments with the assistance of retained counsel;

"ii. the applicant will be given the opportunity to confront and cross-examine witnesses relied upon by the owner;

"iii. an impartial HUD decision maker who shall not have participated in any way in making the determination under review shall make the eligibility decision;

"iv. the decision maker shall accept testimony only regarding alleged grounds for ineligibility of which the applicant had prior written notice;

"v. the decision maker's written decision regarding eligibility must rest solely on valid Section 8 admissions criteria and the evidence received at the hearing and must state rational, nonarbitrary reasons for the determination and the evidence relied on and must be provided to the applicant with reasonable promptness;

"f. upon a final determination of eligibility, the applicant shall be considered eligible as of the date of the application."

The "private" defendants argue that there is insufficient state action on their part to support a claim against them; that plaintiffs do not have a property interest in the benefits they seek; and that, in any case, the private defendants here are entitled to a qualified immunity from liability for damages or for attorneys' fees.

The "federal" defendants argue that there is no federal action entitling plaintiffs

to due process protections, and that plaintiffs do not have a property interest in the benefits at issue.

The pertinent facts are undisputed. The private defendants, through various programs, are involved in providing Section 8 housing to low income, elderly, and handicapped persons. The housing programs are administered and overseen by the United States Department of Housing and Urban Development (HUD), the federal defendants.

The Section 8 program was enacted as part of the Housing and Community Development Act of 1974, which amended Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f. As far as is relevant here, the program subsidizes the rental costs of low income families meeting certain income criteria in existing rehabilitated or newly-constructed housing. Eligible families pay a specific percentage of their income for the rental and HUD pays the rest to the private landlord. 42 U.S.C. § 1437f(e)(2) provides that the selection of tenants "shall be assumed by the owner . . . except that the tenant selection criteria shall give preference to families which occupy substandard housing or are involuntarily displaced at the time they are seeking housing assistance under this section. . . ." The regulations provide that if an owner determines that an applicant is:

"... ineligible on the basis of income or family composition, or that the owner is not selecting the applicant for other reasons, the owner will promptly notify the applicant in writing of the determination, the reasons for the determination, and that the applicant has the right to meet the owner or managing agent in accordance with HUD guidelines. . . ." 24 C.F.R. § 883.704(b)(3).

The Milwaukee Area HUD office oversees and reviews procedures used in tenant selection to assure compliance with Section 8 rules and regulations. HUD instructs owners in procedures for carrying applicants on waiting lists and responds to complaints regarding the occupancy of units. The office also provides to the owners national uniform model HUD Tenant Application and Lease forms. The forms actually used by the owners are approved by the HUD office.

Recht-Goldin-Siegel Properties (R–G–S) is an unincorporated association which manages Section 8 units, including those owned by defendants Grant Park Square Apartments Co., and North Meadows Apartments —No. 3. North Meadows 3 consists of 8 units of Section 8 family housing. It is regulated under the new construction program, 24 C.F.R. § 880, *et seq.* Grant Park Square consists of 47 family units, 6 units for handicapped persons, 91 units for the elderly, and 10 units for elderly handicapped persons.

Initially, applications for Grant Park Square were distributed by the City of South Milwaukee at its City Hall. After Grant Park Square became fully occupied, the application procedure for it and for North Meadows 3 followed essentially the same pattern. Persons who called to request an application were placed on waiting lists, which contained the name, the date of contact, other eligibility information such as income level and family size or age. No application forms were sent out to persons on the waiting list at this time. When a vacancy occurred in the units for the elderly or the handicapped at Grant Park Square, the person at the top of the waiting list was notified, if he could be located, and invited to the project to complete an application. An interview was arranged at R–G–S offices. As to the family units, R–G–S maintained a few completed and approved applications on hand from which the next tenants were chosen. When the number of approved applications ran low, application forms were sent to the next 10 or 15 persons on the waiting list. After the applications were sent out, priority in obtaining apartments was granted, not on the basis of the applicant's original place on the waiting list, but rather on the order in which the completed applications were returned.

If the applications showed that the applicant was eligible for housing based on family size, age, and income level, R–G–S

obtained a credit report and oral or written landlord reports from 2 previous landlords.

If an application was denied, a form letter was sent out, containing the following list of reasons for denial, one or more of which may be indicated as applicable:

ineligibility because of income level;

ineligibility because of family size or composition;

prior non-payment or late payment of rent history;

poor credit history;

unacceptable living or housekeeping habits;

poor care for other's property;

unfavorable landlord reports; and

other

The form letter also invited the applicant to make an appointment to discuss the denial of the application. According to the plaintiffs, as of June, 1982, there were approximately 2,132 potential applicants on the waiting lists for Grant Park Square and North Meadows 3. The private defendants indicate that that number includes people who are no longer on waiting lists.

According to the affidavit of Norman Nye, dated February 14, 1983, the R–G–S procedure has changed since June, 1982. Now, unless the waiting lists are suspended, any person calling to express an interest in an apartment is provided with a short application to "Qualify For Government Subsidized Housing". Waiting lists are suspended when sufficient applications are on hand that the average wait for a unit is estimated to be a year or more. If the list is suspended, potential applicants are advised that they should call again within a given time. When a vacancy occurs or is expected, persons who have pre-qualified based on the short application are invited to complete a standard application.

■ It is into this process that plaintiffs wish to insert what, if their requests were granted, would be a full-blown hearing with a right to call and cross-examine witnesses and the right to a formal written decision. From what I can gather, they seek to have each person who is either on a waiting list or has submitted a short application to have the right to that hearing if the application is denied. Plaintiffs claim that the burden on the defendants in making such a change in their procedures would be "relatively light". I am not certain that the burden would be light. Plaintiffs are, however, quite right when they argue that inconvenience is not a reason for denying persons due process of law. Due process may be required even in situations where it does cause some inconvenience. Whether due process would require the placing of such bunglesome procedures on a program that the program would expend a disproportionate amount of its resources on procedures rather than benefits is somewhat more questionable. *See Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). However, none of the procedural requirements sought by the plaintiffs are rightly imposed absent a finding that plaintiffs possess a property interest in the benefits.

■ In determining whether a protected interest is involved, a court must look to the nature of the individual's claimed interest. In *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the court stated:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

A protectible property interest arises not out of the Constitution itself or out of any inherent obligation of the government to treat its citizens fairly, rather it must arise out of a statutory entitlement, a contract, etc., granting him a "legitimate claim of entitlement."

Growth of the doctrine that the entitlement to government benefits constitutes a protectible property interest is traced back to *Goldberg, supra,* in which the court found that recipients · had a protectible property interest in their welfare benefits. Due process protections have been extended to parole applications under certain circum-

stances [*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)]; to Social Security benefits [*Wright v. Califano,* 587 F.2d 345 (7th Cir.1978)]; to the continued receipt of subsidized housing benefits [*Escalera v. New York City Housing Authority,* 425 F.2d 853 (1970), *cert. den.* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970)]. In fact, as pointed out by the court of appeals for this circuit, as court decisions have extended the definition of protected rights beyond what were traditional notions of liberty and property, "It is often difficult to discern the boundaries of due process protection." *Holbrook v. Pitt,* 643 F.2d 1261, 1277 n. 33 (7th Cir.1981).

■ In this case, it is also somewhat difficult to determine the appropriate analysis of the issue. Logic indicates that one must as a first step pinpoint the source of the entitlement asserted. With hindsight, that task seemed easy in *Goldberg,* in which state law provided that eligible persons would receive assistance. It is easy in the housing cases in which the persons asserting protection are already tenants and are thus in possession of some tenancy rights.

If plaintiffs here have an entitlement, it necessarily must arise from the statutes because they have no contractual rights with the landlord. The statutes at issue, however, seem clearly to contemplate providing some housing to alleviate the housing problem among low income persons, but not to providing a unit for each deserving person. The situation contrasts with most entitlement cases in which a property interest is found. Welfare benefits, for example, are provided to all qualified applicants, not to those who apply before the funds run out. While Section 8 housing must go to qualified persons without regard to race, sex, etc., not all qualified persons will get a unit. The facts here show that enormous numbers of people apply for the benefits which are severely limited in number.

Standing alone, the fact that not all eligible persons will receive benefits is not in all cases fatal to the establishment of a property interest. In *Davis v. Ball Memorial Hospital Assoc.,* 640 F.2d 30 (7th Cir.1980), the court wrestled with the issue of whether there was an entitlement to assistance under the Hill-Burton Act. The regulations at issue

". . . seem to contemplate the possibility that there will be more eligible applicants than the facilities will have resources to treat on an uncompensated basis. The eligibility cases in which an entitlement has been found ordinarily make assistance mandatory when eligibility is found. No such conclusion is possible in this case." At p. 38.

Applying an analysis taken from a dissent in *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir.1974), the court concluded in *Davis* that a property interest existed despite the fact that not all eligible persons would necessarily receive benefits. The portion of the court's reasoning which is relevant here states that even though the statute contemplates that not all eligible persons will necessarily receive relief:

". . . the regulations appear to anticipate that granting an application will be the usual course, perhaps because the customary level of compliance is set high enough to ensure that most applicants will receive services. Accordingly, claimants will ordinarily have to demonstrate only their eligibility." At 42, 43.

*Davis* was called a close case by the court. The case before me is too far removed from *Davis.* It would, I believe, torture the reasoning of the entitlement cases to find a property interest here.

Two parenthetical comments may be appropriate. First, the fact that no property interest exists does not necessarily mean that the benefits will be distributed in an unfair manner. Indeed, the procedures used by both the private and the public defendants in this case seem calculated to ensure that the benefits will descend on the class of persons for whom they are intended.

Secondly, that class of persons—in addition to having individual interests in not

being denied housing wrongfully—has a very real interest in the court's allowing the government to experiment with programs designed to benefit the class, even though not every individual member obtains the benefit.

In short, in this case, I find that no property interest exists to trigger due process requirements. Even if a property interest were found, however, I am not entirely certain that in a situation such as this, due process—a concept flexible enough to meet many situations—would require more of the defendants than they are currently providing.

Because no property interest exists and the action will be dismissed, there is no need to consider the motion to expand the class. The motion for a protective order "blacking out" certain statements from the record is also denied.

IT IS THEREFORE ORDERED that this action is DISMISSED.