**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, LOCAL 103, AFL–CIO, Plaintiff–Appellant,**

v.

**BABCOCK & WILCOX, Defendant–Appellee.**

No. 91–3406.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1992.

Decided Aug. 4, 1993.

Charles L. Berger (argued), Andrew Ward, Berger & Berger, Evansville, IN, for plaintiff-appellant.

K. Richard Hawley, Hawley, Hudson & Almon, Mt. Vernon, IN, William A. Ziegler (argued), Sullivan & Cromwell, New York City, for defendant-appellee.

Before FLAUM and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

The International Association of Bridge, Structural and Ornamental Iron Workers, Local 103, AFL–CIO, (hereinafter "Iron Workers") filed a suit asking for money damages for breach of a collective bargaining agreement by Babcock & Wilcox (hereinafter "B & W") as authorized by Section 301 of the Labor–Management Relations Act, codified at 29 U.S.C. § 185. B & W filed a motion for summary judgment. The district court granted summary judgment for B & W and dismissed the action with prejudice.

## I. BACKGROUND

On September 28, 1982, a pre-job meeting was held concerning upcoming work. B & W, the Iron Workers, and several other unions had entered into a Project Agreement concerning B & W's work on the D.B. Wilson Station in Centertown, Kentucky. Article IV of the Project Agreement provides for binding arbitration of disputes and grievances, except that jurisdictional disputes are to be resolved by the Impartial Jurisdictional Disputes Board (IJDB), as provided in Article V. (IJDB is an organization created by agreement of the Building and Construction Trades Department, AFL–CIO and several Employer Associations.) At the pre-job meeting, assignment of work was discussed, and the structural steel work was assigned to the Boiler Makers–Iron Workers Agreement, a 1926 agreement between the two unions, allocating types of work to the jurisdiction of each. On September 21, 1983, B & W assigned the structural steel work to the Boiler Makers, and that work commenced in October, 1983.

The Iron Workers contend that the 1982 assignment was a specific assignment of the structural steel work to their union. They believed that the Boiler Makers–Iron Workers Agreement (BM–IW Agreement) gave them jurisdiction over this type of work. B & W contends that the 1982 assignment was only a statement that the assignment would be in accordance with the BM–IW Agreement, and the work was not specifically assigned until 1983 when it was assigned to the Boiler Makers, per B & W's interpretation of the BM–IW Agreement.

The Iron Workers objected to the 1983 assignment to the Boiler Makers, arguing that it was a change from the 1982 assignment, in violation of the Rules of the IJDB. On September 30, 1983, the Iron Workers wrote to the chairman of the IJDB claiming that B & W had improperly changed work assignments and requesting that the Board order B & W to honor the 1982 assignment. On October 3, the Board wrote to B & W

informing it that "[i]t is a violation of the Procedural Rules for a contractor who has made a specific assignment of work to change such assignment unless there is agreement between the trades involved or a directive from the Board." The Board ordered B & W to honor the original assignment and respond to the Iron Workers' allegations by supplying a complete description of the facts and circumstances surrounding the original assignment of work. B & W responded on October 7 arguing to the Board that the 1982 assignment was not a specific assignment and submitting the meeting minutes and the assignment pages from the Pre-Job Booklet. On October 24, the Iron Workers again wrote to the Board arguing that the original assignment was to the Iron Workers, and on that same date, filed this action in the District Court. On October 26, the Board responded,

> Assignments such as the one involved in this matter—Structural support steel, BM/IW agreement—are not specific and are subject to interpretation by the parties.
>
> Unless specific work was performed under the above assignment and has now been reassigned by the contractor, this office has no way of determining the merits of the dispute. Accordingly, the involved International Unions have a responsibility to interpret the applicable agreements between them and so inform the responsible contractor.
>
> If on the other hand, relying on the assignment, certain work was assigned and performed by the iron workers and then reassigned without agreement by the trades involved, this office will act upon receipt of such specific information.

Although the Board invited further information, the Iron Workers did not supply any. Thus the Board decided on the only complaint made to it that B & W's announcement at the 1982 meeting was not a specific assignment. The Iron Workers did not ask the Board to decide that the 1983 assignment to the Boilermakers was in violation of the 1926 BM–IW agreement or any other decision or agreement and the IJDB evidently did not interpret the Iron Workers' complaint as calling for a decision on that point.

B & W moved the district court for summary judgment. The district court noted that the Iron Workers had not exhausted the available contractual remedies and withheld judgment on the motion pending a showing by the Iron Workers that pursuing those remedies would be futile. The Iron Workers submitted the affidavit of Joseph Hunt, general organizer of the union, who averred that he had attempted to have the IJDB respond further and was advised that the Board could not be involved in further activity in the dispute, which was pending in federal court. (R. at 20.) The district court decided that the Iron Workers had not fully pursued their remedies under the Project Agreement and dismissed the action "on its merits." The Iron Workers now appeal.

## II. DISCUSSION

■ We review a decision to grant summary judgment *de novo* and will affirm only if there is no genuine issue of material fact and the moving party, B & W, is entitled to judgment as a matter of law. *Ooley v. Schwitzer Div. Household Mfg., Inc.*, 961 F.2d 1293, 1297 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992). We view the facts in the light most favorable to the non-moving party, the Iron Workers. *Id.*

■ Article IV of the Project Agreement provides for a grievance and binding arbitration procedure for all disputes and grievances except jurisdictional. Article V is entitled Jurisdictional Disputes. It provides in relevant part:

> The assignment of work will be solely the responsibility of the Contractor performing the work involved, and such work assignments will be according to decisions and agreements of record. . . .
>
> 1. All jurisdictional disputes shall be resolved without the occurrence of any strike, work stoppage, or slow-down of any nature, and the Contractor assignment shall be adhered to until the dispute is resolved as follows:

(a) Jurisdictional disputes will be resolved by the Impartial Jurisdictional Disputes Board....

Iron Workers appear, from the arguments in their brief, to view the issue whether B & W's 1982 action at the meeting was an assignment of the work to the Iron Workers as an issue of fact which would prevent summary judgment. In so arguing, they fail to deal with the proposition that IJDB had already decided that issue against them.

As to that narrow issue, the Iron Workers have failed to show any reason why a court could appropriately reexamine the issue.

When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," [*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)] a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.

*W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). Confining ourselves, for the moment, to the narrow issue, the impropriety of a court reexamining the IJDB's decision is reason enough to affirm the judgment.

■ There is a broader issue, though scarcely hinted at by the Iron Workers. It is whether the work in question was allocated by the 1926 agreement to the Iron Workers, so that B & W's 1983 assignment of the work to the Boiler Makers was, itself, a breach of the Project Agreement. The Iron Workers did not present the broader issue to the IJDB. Assuming, as we do, that it would be a jurisdictional dispute, that is where it should go. If any facet of the issue is other than a jurisdictional dispute, then that would have to go to arbitration under Article IV. In any event, resort to the contractual remedy is required. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

■ At one point, Judge Brooks gave the Iron Workers an opportunity to make a showing that it would be futile to proceed before the IJDB. The Iron Workers made no presentation at that point of either the narrow nor the broader issue to the Board. The vague assertion of being "advised" by the IJDB that it could not be involved in further correspondence or activity does not show the futility of a proper presentation of a further claim and the Iron Workers have not really argued that it did.

■ The Iron Workers suggest in their reply brief that Article V, unlike Article IV, is not a provision for arbitration within the meaning of the Steelworkers Trilogy. We conclude, however, that Articles IV and V are both provisions for arbitration, the difference being that in Article V the parties have named a particular arbitrator to determine a class of disputes which are excluded from Article IV.

## III. CONCLUSION

The district court judgment dismissed the action on the merits, and the Iron Workers argue that it should have been without prejudice. This argument suggests the union may wish to pursue its claim through the IJDB, and that dismissal on the merits may prejudice that.

The judgment is modified to provide that dismissal is without prejudice to pursuit of plaintiff's claims by invocation of contractual remedies, and as so modified, it is AFFIRMED. Defendant may recover its costs on appeal.