**Ophelia BLACKMAN, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 92 C 5472.**

United States District Court, N.D. Illinois, E.D.

Nov. 8, 1993.

Mark Joseph Heyrman, Lisa B. Parsons, Mark T. Barnes, Thomas E. Keim, Jr., Mandel Legal Aid Clinic, Chicago, IL, for plaintiffs.

Michael J. Shepard, U.S. Atty., Ann L. Wallace, Asst. U.S. Atty., Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

Ophelia Blackman, as class representative,[1] sues Donna Shalala ("the Secretary"), Secretary of Health and Human Services ("HHS"), for declaratory and injunctive relief regarding the Secretary's administration of the Supplemental Security Income ("SSI") program under the Social Security Act, 42 U.S.C. § 1381, *et seq.* Blackman contends that the Secretary violates the Social Security Act, federal regulations, and the Constitution by forwarding SSI applications of claimants who have prior claims on appeal to HHS' Appeals Council ("the appeals council"). Both Blackman and the Secretary move for summary judgment.

### BACKGROUND

Blackman, representing a class of similarly-situated claimants, challenges the internal administrative rule by which the Secretary forwards a claimant's SSI application to the appeals council when that claimant has a prior application pending before the appeals council. Blackman contends that the Secretary's rule, which defers a ruling on the subsequent claim, violates federal law and the Constitution.

The gravamen of Blackman's complaint is that claimants filing SSI applications who already have an application pending on appeal face a no-win situation: HHS forwards the subsequent application to the appeals council, although the appeals council may not rule upon the subsequent claim; thus, even if the claimant is entitled to benefits in light of her new claim, she must wait out the lengthy appeals process on her initial application before receiving benefits. The only way for the claimant to obtain a speedier resolution for her subsequent claim would be to abandon the appeal of her initial claim, and any potential benefits for the period between filing the initial claim and filing the subsequent claim. SSI claimants whose circumstances deteriorate after filing initial applications (*e.g.,* because of an illness) paradoxically must wait longer to receive benefits.

The Secretary responds that it is HHS that faces the no-win situation. Were HHS not to forward new claims to the appeals council, there would be a duplication of effort and a waste of agency resources. She asserts that the practice conserves resources and prevents duplicate claims from being adjudicated concurrently in separate forums. She argues that were it not for her practice of forwarding claims to the appeals council, SSI applicants would face even longer delays. The Secretary contends that subsequent applications are forwarded to the appeals council in the interest of administrative efficiency.

On October 23, 1992, the court certified a circuit-wide class of all claimants who have a claim pending before the appeals council and have had a subsequent application forwarded to the council without receiving an initial determination on the subsequent application from the Secretary.[2] Blackman's certification motion was granted as unopposed after repeated procedural defaults by the Secretary. The Secretary twice moved for reconsideration of the certification, but both times failed to present any ground for reconsideration, or any reason for her inattention to the certification motion when the motion was pending. The Secretary moved to dismiss for lack of jurisdiction and for improper venue, and moved for summary judgment. These motions were denied. *See* Memorandum Order and Opinion, No. 92 C 5472 (N.D.Ill. May 25, 1993); Memorandum Order

---

1. Blackman originally was one of two class representatives; the other representative was dismissed when it became apparent that he would not adequately represent the class. *See* Order No. 92 C 5472 (N.D.Ill. Dec. 7, 1992).

2. The court certified the following class under Fed.R.Civ.P. 23(c)(1): all Illinois, Indiana and Wisconsin residents who:

    (1) have, or will have, a claim for SSI benefits pending before the appeals council;

    (2) have, or will have, filed a new application for SSI benefits with the Secretary while their prior claim is pending before the appeals council;

    (3) have had, or will have had, their new applications forwarded to the appeals council; and

    (4) have not, or will have not, received an initial determination of eligibility on their new SSI claims while they have a prior claim pending before the appeals council.

    Memorandum Opinion and Order, No. 92 C 5472 (N.D.Ill. Oct. 23, 1992).

and Opinion, No. 92 C 5472 (N.D.Ill. July 15, 1993). Blackman and the Secretary now move for summary judgment, pursuant to Fed.R.Civ.P. 56.

## DISCUSSION

### 1. Summary Judgment

A movant is entitled to summary judgment when the moving papers and affidavits show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Local 103 v. Babcock & Wilcox*, 1 F.3d 589, 591 (7th Cir.1993). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the court must consider all evidence in the light most favorable to the nonmoving party. *Local 103*, 1 F.3d at 591; *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir.1993). However, once the moving party meets its burden of production, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1388 (7th Cir.1993). Where the nonmovant fails to make a sufficient showing on an essential element of the case on which it would bear the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

In this case, there are no genuine issues of material fact;[3] summary judgment therefore is appropriate. The only contested question in this case is the legal effect of the Secre-tary's forwarding rule. Blackman and the Secretary move for summary judgment, both contending that they must prevail as a matter of law. Accordingly, the court must decide not whether summary judgment is appropriate, but which side should prevail.

### 2. The SSI Program And The Forwarding Rule

The SSI program provides basic subsistence to certain classes of needy persons. *Howard v. Bowen*, 823 F.2d 185, 187 (7th Cir.1987). Under Title XVI of the Social Security Act, the Secretary must pay benefits under the SSI program to "every aged, blind, or disabled individual who is determined ... to be eligible on the basis of his income and his resources." 42 U.S.C. § 1381a, 1382(a).

The Secretary has prescribed by regulation a four-step eligibility determination process for SSI benefits. *See* 20 C.F.R. § 416.-1001, *et seq.* A claimant first must apply with the state Disability Determination Service ("the state DDS") for an initial determination of eligibility.[4] If the state DDS denies the claimant's application, she may seek reconsideration. If the claim again is denied or reconsideration is denied, the claimant is entitled to a hearing before an administrative law judge ("ALJ"). Finally, if the ALJ rejects the claim, the claimant may request review of the ALJ's decision by the appeals council.[5]

To assist in implementing the foregoing regulations, the Secretary has established internal operating rules, set forth in the Program Operations Manual System ("the manual"). The manual provides that when a claimant files an application while she has a prior claim pending before the appeals council, the subsequent application is forwarded to the appeals council for consideration with-

---

3. The parties disagree on particular facts. However, there are no genuine issues of material fact concerning the central issue in this case: that when a claimant with a prior claim before the appeals council files a new claim, the subsequent claim is forwarded to the appeals council. The new claim is ruled upon only after the appeal of the earlier claim is complete.

4. The SSI program is jointly-administered by HHS and by eligible states. *See* 20 C.F.R. §§ 416.1001, 1003.

5. The appeals council may review the ALJ's decision on several grounds: abuse of discretion, error of law, lack of substantial evidence, or the existence of a broad policy or procedural issue that may affect the general public interest. *See* 20 C.F.R. § 1470(a).

out an initial determination being made by the state DDS. *See* Manual § DI 20101.-025(C)(1) ("the forwarding rule").[6] The appeals council may consider new and material evidence attached to the subsequent application relating to the period before the ALJ's decision on the first claim, but the appeals council may not consider evidence of a worsened condition or of a new, independent condition that arose after the ALJ's decision. 20 C.F.R. § 416.1470(b).

The appeals council does not rule on the subsequent application. Rather, the appeals council determines whether the subsequent claim concerns essentially the same issues as the first, and is therefore duplicative, or whether it involves issues that arose after the ALJ decision. Pl.'s Mot.Summ.Judg., Ex. 23. The appeals council considers any evidence attached to the second application that may concern the original claim, but it does not address the merits of the subsequent application. *Id.*[7] If the appeals council determines that the subsequent application involves issues that arose after the ALJ's decision, the application is sent to the state DDS for an initial determination—after the appeals council has ruled on the initial claim. Pl.'s Mot. Summ.Judg., Ex. 3 ¶ 15.

When the appeals council rules that a claimant is entitled to benefits based on the original application, the claimant is awarded benefits from the date she filed the initial claim. 20 C.F.R. § 416.330. However, when the appeals council rules against the claimant on her original application, the subsequent application is sent to the state DDS for initial determination. Thus, when a claimant files a

second application, and later has her first claim denied, the net effect of the Secretary's policy is to postpone ruling on SSI eligibility for as much as six months.[8]

### 3. Counts I And II: The Claimant's Right To Resolution And A Timely Hearing

In Counts I and II, Blackman contends that the forwarding rule violates the Social Security Act. Blackman argues that by forwarding new SSI applications to the appeals council (which does not rule on them), the Secretary fails to meet her statutory mandate. The Social Security Act directs the Secretary:

> to make findings of fact, and decisions as to the rights of any individual applying for payment under this subchapter....

42 U.S.C. § 1383(c)(1)(A). In addition,

> the Secretary shall provide reasonable notice and opportunity for a hearing to any individual who ... claims to be an eligible individual ... and is in disagreement with any determination under this subchapter.

*Id.* Blackman argues that in light of the forwarding rule, an applicant loses the right to an eligibility determination when she has an application pending before the appeals council. Blackman further asserts that a claimant who files a second application loses the opportunity for a hearing within a reasonable time.

Blackman's reading of the Social Security Act lacks merit. Under the forwarding rule, the Secretary defers ruling on a claimant's second application, but she does not "fail to make findings of fact, and decisions as to the

---

**6.** A similar procedure governs applications filed while a prior claim is pending before the ALJ. *See* Manual § DI 20101.025(B)(1). Blackman does not challenge the rule by which applications are forwarded to the ALJ.

**7.** The Secretary contends that the appeals council does "consider" the second claim when it relies upon evidence attached to the second application. Def.'s Mem.Supp.Summ.Judg. at 7. The Secretary's contention is belied by her assertion that the first application remains in effect, rendering the second claim a "duplicate." Def.'s Mem.Opp.Pl.'s Mot.Summ.Judg. at 6. By considering new evidence (relating to the period before the ALJ hearing), the appeals council does not consider the subsequent claim.

**8.** The parties agree that the forwarding rule may cause delays as long as six months. In 1992, it took the appeals council an average of 189 days to process a claim, while on average it took the state DDS 92 days. Pl.'s Mot.Summ.Judg., Exs. 9, 12. In cases in which the claimant loses her initial appeal after a subsequent application has been forwarded to the appeals council, it may take as long 281 days (the appeals process plus the state process) before the resolution of the second claim. The delay may not be quite as long as six months, however, if the claimant files her subsequent claim some time after appealing the ALJ's decision.

rights of" the claimant. During the appeals process, the claimant's rights are decided respecting the first application; immediately thereafter, when the subsequent claim is sent to the state DDS, the claimant's rights are decided respecting her subsequent application.[9] Blackman's contention that the Secretary fails to rule on the claimant's eligibility is unfounded.

Nor does the Secretary fail to give notice and a hearing to claimants filing subsequent applications. The forwarding rule is implicated in cases that already are on appeal— that is, cases in which the Secretary already has met her burden to provide a hearing. In cases involving the forwarding rule, the claimant has shown her disagreement with the Secretary's resolution of her claim, and has been granted a hearing before the ALJ. With respect to the subsequent application, there has been no determination, and therefore there is no disagreement with a determination. Should a disagreement arise, the claimant once again would receive a hearing before the ALJ. Blackman's contention that the forwarding rule strips claimants of their rights to a hearing is meritless. Summary judgment is denied to Blackman and granted to the Secretary on Counts I and II.

### 4. Count III: Effective And Efficient Administration Of The Social Security Act

■ Blackman contends that by implementing the forwarding rule, the Secretary violates her statutory mandate to administer the SSI program effectively and efficiently. The Social Security Act directs the Secretary to

> prescribe such requirements with respect to the filing of applications ... as may be necessary for the effective and efficient administration of this subchapter.

42 U.S.C. § 1383(e)(1)(A). The essence of Blackman's claim is that the Secretary's implementation of the Social Security Act creates a "heads I win; tails you lose" situation against applicants who have appeals pending before the appeals council. Because the appeals council may not consider facts arising after the date of the ALJ's decision, the appeals council always treats subsequent applications the same way: either it refuses to act upon the second application because it finds it to be identical to the first, or it refuses to act upon the second application because it differs from the first. Either way the second claim is not ruled upon, and the applicant must wait until after the appeals council's ruling to have her subsequent application sent to the state DDS for an initial eligibility determination.

The Secretary defends the forwarding rule as an administrative and legal necessity, and balances the delays that the rule causes in certain cases against the rule's tendency to promote efficiency. The Secretary characterizes the forwarding rule as a routing mechanism meant to promote agency efficiency: because the appeals council already must rule on a prior claim by the same claimant, it can determine most easily whether a subsequent application is so related to the first that the two claims should be addressed in a single proceeding. Because the appeals council may not rule on new claims, it is in the best position to decide whether a new claim is identical to the initial claim. Furthermore, were subsequent claims not forwarded to the appeals council, the same claimant could have numerous appeals at different levels of the process—possibly with contradictory results. The Secretary contends that the forwarding rule promotes overall agency efficiency, and therefore reduces delays for all claimants.

The Secretary argues that the forwarding rule is consistent with legislative intent, because Congress specified that the appeals council may not review evidence concerning the period after the ALJ's decision. See H.R.Rep. No. 96–100, 96th Cong. 1st Sess. 14 (1979). The Secretary deduces that because the appeals council may not consider evidence concerning the period after the ALJ's decision, the appeals council should determine whether new evidence is related and/or admissible in cases before it. The Secre-

---

**9.** Unless, of course, the claimant prevails on her first claim, thereby rendering her second claim moot.

tary's position has some merit, but is overbroad: although the appeals council is well-situated to determine whether evidence is related to the proceedings before it, the forwarding rule does cause some unrelated, possibly meritorious claims to languish for six months. There is no basis from which to conclude that Congress intended to foreclose new applications from being filed at the state DDS level concerning new facts not related to the proceedings before the appeals council. The Secretary's justification for the forwarding rule based on congressional intent lacks merit.

The Secretary's efficiency justifications for the forwarding rule are more convincing. The Secretary contends that despite the delays that the forwarding rule causes in some cases, "a subsequent claim is always adjudicated ... the only dispute is when, and at what level, the decision is rendered." Def.'s Mem.Supp.Mot.Summ.Judg. at 8. Thus, the Secretary dismissively terms Blackman's claim "a complaint about delay," and argues that the claim is legally insufficient. *Id.* at 12–13. The Secretary's characterization of this case is accurate; the effect of the Secretary's policy is to delay rulings on subsequent claims for as much as six months.[10] In cases involving delays by HHS, the courts have held that the Secretary violates the Social Security Act if her procedures cause unreasonable delays in resolving benefits claims. The question in this case is whether the delays caused by the forwarding rule are unreasonable.

In *Heckler v. Day*, 467 U.S. 104, 119, 104 S.Ct. 2249, 2257, 81 L.Ed.2d 88 (1984), the Supreme Court ruled that in light of the "unmistakable intention of Congress" not to set specific deadlines for processing claims under the Social Security Act,[11] a district court may not, in the face of unreasonable delays by the appeals council, prescribe mandatory deadlines for agency action. In so holding, the Court recognized that unreasonable delays violate the Social Security Act in light of a claimant's entitlement to "reasonable notice and opportunity for a hearing." *Id.* at 108, 111, 104 S.Ct. at 2251, 2253.[12]

Similarly, in *Wright v. Califano*, 587 F.2d 345, 350–54 (7th Cir.1978), the Seventh Circuit ruled that delays in the Secretary's four-step appeals process do not *per se* rise to the level of violations of the Social Security Act.[13] The *Wright* court found that the Secretary "is under a statutory duty to provide hearings and Appeals Council reviews within a 'reasonable time,'" but found that long delays without more do not violate that statutory duty. *Wright*, 587 F.2d at 351.

Contrary to the Secretary's position, neither *Day* nor *Wright* holds that a suit against the Secretary concerning delays in processing SSI claims is *per se* legally insufficient. Both *Day* and *Wright* held that the Secretary has a duty to rule on claims within a reasonable time. The question in this case, as it was in *Wright*, "is to give content to the word 'reasonable' in the circumstances before us." *Id.; see also Deloney v. Califano*, 488 F.Supp. 610, 613–14 (N.D.Ill.1980).

In *Wright*, the Seventh Circuit found that the delays at issue were not unreasonable because they were system-wide and impacted all applicants equally, and because there was no realistic way to remedy the long delays. *Wright*, 587 F.2d at 352–53.[14] The court noted that there may be situations in which a delay would be so unreasonable that it would require judicial intervention. *Id.* at 353 n. 12. However, the court held that "adminis-

---

10. See note 8.

11. *Day* involved disability claims under Title II of the Social Security Act, §§ 401, *et seq.* Title II's eligibility scheme is "virtually identical" to the eligibility scheme in Title XVI, which is at issue in this case. *Day*, 467 U.S. at 118, 104 S.Ct. at 2257.

12. The language in Title XVI is identical. *See* 42 U.S.C. § 1383(c)(1)(A).

13. *Wright* involved a class action challenge under the old-age and survivorship program of the Social Security Act. 42 U.S.C. § 201, *et seq.*

14. In so finding, the Seventh Circuit distinguished the facts at issue from cases "involving [delays] greatly disproportionate to the amount of time normally required in similar cases or when there are other indications of a lack of evenhandedness or a dilatory attitude on the part of the agency." *Id.* 587 F.2d at 353 (citing Goldman, "Administrative Delay and Judicial Relief," 66 U.Mich.L.Rev. 1423, 1425 (1966)).

trative efficiency is not a subject particularly suited to judicial evaluation," and noted the agency's "good faith efforts ... to cope with the delay problem under severe resource constraints," and therefore found the delays at issue not unreasonable. *Id.*

Blackman contends that the delays caused by the forwarding rule do not result from "various exigent circumstances beyond the agency's control." Pl.'s Mem. Opp.Def.Mot.Summ.Judg. at 13 (citing *Deloney v. Califano,* 488 F.Supp. 610, 612–13 (N.D.Ill.1980)). She asserts that the delays are arbitrary: from the standpoint of an applicant who must wait six months before the resolution of her claim, the delays exhibit a lack of evenhandedness.[15] Notwithstanding Blackman's contentions, the Secretary establishes that the delays are not arbitrary, but unavoidable. The Secretary shows the forwarding rule to be an administrative necessity. To the extent that the forwarding rule causes delays while promoting efficiency throughout the agency, the delays are unavoidable.

The appeals council may consider any evidence as long as it concerns the period before the ALJ decision. It is in the best interest of a claimant filing a subsequent claim that the appeals council consider any and all evidence in ruling on her claim, including the evidence attached to the second claim: only a favorable ruling by the appeals council allows the claimant to receive benefits from the date she filed her first claim. Some administrative body must determine whether evidence in the subsequent claim is admissible before the appeals council. The appeals council is best-situated to make that evidentiary determination.

If the new evidence relates to the period before the ALJ's decision, it is admissible before the appeals council—and the second claim presumably involves issues that are related to the first claim. In such cases, the appeals council saves resources by resolving identical claims in one proceeding. In 1992, approximately 36,000 claims were brought before the appeals council, while nearly 2 million claims were processed at the state DDS level.[16] Assuming that one half of the cases before the appeals council involved subsequent claims,[17] the forwarding rule removed 18,000 cases from the crowded state DDS dockets. A significant percentage of the 18,000 subsequent claims are likely to be identical to the initial claims. *See Green v. Heckler,* 803 F.2d 528, 530 (9th Cir.1986) (presumption that resolution of first claim will be the same for second claim filed shortly thereafter). In addition, 37 percent of all cases before the appeals council are resolved in favor of the claimant.[18] Thus, in well over one third of the cases forwarded to the appeals council, the forwarding rule saves the states from making redundant initial determinations.

The forwarding rule saves administrative resources even in cases in which the claimant has an unrelated second claim. In these cases, the appeals council does not remand the second application to the state DDS until after the appeals process is over. The rule thus avoids a duplication of effort and the possibility of inconsistent decisionmaking on different levels of the process. Were the state DDS to make an eligibility determination on the second claim before the appeals council resolved the first claim, there would be a need to review all cases to reconcile possible inconsistencies. Under the forwarding rule, the Secretary takes the sensible

15. Blackman's allegations that claimants are dissuaded from filing subsequent applications do not establish that the forwarding rule exhibits a lack of evenhandedness. Blackman fails to show that the isolated events alleged are related to the forwarding rule.

16. *See* Pl.'s Mot.Summ.Judg.Exs. 15 and 18.

17. There are no exact statistics on the number of subsequent claims forwarded to the appeals council. The parties both use the number 18,000 (*i.e.,* half of all cases) for the sake of argument.

18. Blackman asserts that the appeals council grants affirmative relief only 4 percent of the time, so the forwarding rule causes six month delays in 96 percent of the cases involving subsequent claims. The Secretary responds that the appeals council also remands 33 percent of the cases to the ALJ—which may decide the subsequent claim with the first claim. Thus, in 37 percent of the cases, the appeals council's result is favorable to the claimant.

step of holding onto the second claim to ensure consistent decisionmaking.[19]

Finally, the delays caused by the forwarding rule are not that long. In *Wright*, the Seventh Circuit found that delays as long as two years were not unreasonable given the circumstances. *See Wright*, 587 F.2d at 353. In this case, the delays are at most six months, and in cases in which the subsequent claim is filed well after the appeal has been filed before the appeals council (*i.e.*, the cases with the highest likelihood of truly changed circumstances) the delays are shorter. In addition, in many cases there is little or no delay because the appeals council finds in favor of the claimant. Although it is regrettable that an SSI claimant must wait even one extra day to receive benefits, the Secretary must make decisions to promote overall agency efficiency to reduce delays for all claimants. The forwarding rule has that effect. The delays that it causes therefore are not unreasonable. Accordingly, summary judgment is denied to Blackman and granted to the Secretary on Count III.

### 5. Count IV: Code of Federal Regulations

In Count IV, Blackman contends that the forwarding rule is inconsistent with HHS' regulations. Blackman argues that the regulations concerning the filing of new claims [20] are frustrated by the forwarding rule. She asserts that in light of the forwarding rule, the Secretary fails to make an initial determination of eligibility benefits, as she must do by regulation. *See* 20 C.F.R. § 416.-340(c).

Count IV recapitulates Count I: once again Blackman equates the Secretary's duty to determine a claimant's eligibility with a duty to resolve claims immediately—regardless of administrative burdens. A close reading of the regulations indicates that the Secretary need not resolve a case immediately. The forwarding rule may defer determination of some claims until the appeals process is

complete, but those determinations are made nonetheless. For the reasons discussed regarding Count I, summary judgment is denied to Blackman and is granted to the Secretary on Count IV.

### 6. Counts V And VI: Constitutional Claims

■ Blackman raises Fifth Amendment challenges to the forwarding rule based on the due process clause and the equal protection component of the due process clause. Blackman's equal protection claim is plainly groundless. Once again, Blackman contends that the Secretary does not make eligibility determinations for claimants filing subsequent applications. Blackman concludes that these claimants are singled out based on their classification. Blackman's argument lacks merit because the Secretary does in fact make eligibility determinations for these claimants: first she resolves the first claim; then (if necessary) she resolves the second claim. Because the Secretary does make eligibility determinations for these claimants, Blackman's equal protection claim is unfounded.

■ Blackman's due process claim is equally groundless. In *Wright v. Califano*, 587 F.2d 345, 356 (7th Cir.1978), the Seventh Circuit ruled that delays in administering benefits under the Social Security Act do not amount to due process violations if HHS has "good faith and unarbitrary reasons" for the delays. The court recognized the flexible nature of due process, and balanced the private and governmental interests. *See also Deloney v. Califano*, 488 F.Supp. 610, 615 (N.D.Ill.1980) (following *Wright* in the SSI context); *see generally Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In light of the finding that the delays caused by the forwarding rule are not unreasonable, it is clear that the Secretary has good faith and unarbitrary reasons for causing the delays. Thus, Blackman does not establish that the forwarding rule violates

**19.** The delays could appear unreasonable only in hindsight. Only in the small percentage of cases in which the claimant's second appeal is unrelated to the first, and in which she loses her appeal before the appeals council, is there a delay.

**20.** *See* 20 C.F.R. §§ 416.330–340.

the due process clause. Accordingly, summary judgment is denied to Blackman and granted to the Secretary on Counts V and VI of the complaint.

## CONCLUSION

Ophelia Blackman's motion for summary judgment is denied. The Secretary of Health and Human Services' motion for summary judgment is granted. Judgment shall be entered accordingly.