David YOUNG, Plaintiff–Appellant,

v.

NORTH DRURY LANE PRODUCTIONS, INCORPORATED, Defendant–Appellee.

No. 95–1889.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1995.

Decided March 29, 1996.

Marvin Gittler, Stephen J. Feinberg (argued), Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Plaintiff-Appellant.

Gloria M. Portela, Joseph S. Turner (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant-Appellee.

Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

David Young appeals the district court's grant of summary judgment to North Drury Lane Productions, Inc. We affirm.

## I. Background

North Drury Lane Productions, Inc. is a wholly owned subsidiary of Marriott Corporation that produces musical shows at the Marriott Lincolnshire Theater in Lincolnshire, Illinois (for convenience, we will refer to North Drury, Marriott, and the Marriott Lincolnshire Theater collectively as "the Theater"). Presenting five different productions a year, the Theater hires musicians represented by the Waukegan Federation of Musicians, Local 284 (the "Union") to perform in the band for each show. Although different musicians must be hired for each production (depending on the types of instruments and talents required for the particular music), the terms and conditions of the musicians' employment are governed by a series of collective bargaining agreements. However, for each production, a "show contract" is executed that identifies the specific musicians hired, the duration of the engagement, and other particulars of the show.

In order to organize the production of the musical aspect of each show, the Theater utilizes the services of one of its musicians known as a "contractor." The contractor negotiates the collective bargaining agreement, engages the individual musicians necessary for each production, and generally "makes the [orchestra] pit happen" and is "responsible for the quality of the music that comes out of that pit."

David Young was a musician affiliated with the Union who had regularly performed at the Theater during the 1980s. In 1989, Young approached the Theater's Executive Producer, Kary Walker, and asked about the possibility of taking on the role of contractor (the previous contractor had left the Theater to join a touring musical). Walker agreed and, after a trial period of two or three shows, Young was hired as the contractor. In January 1990, Young negotiated a new three-year collective bargaining agreement with the Theater on behalf of the musicians and himself, as a musician and contractor (the conditions were substantially the same as the previous collective bargaining agreements, except for a raise in the musicians' rates of pay).

In late 1992, when the 1990 collective bargaining agreement was nearing the end of its term, Young met with various musicians (to discuss their demands and concerns) and began negotiations with the Theater for another agreement. Other than to provide records to Young regarding the relative rates of musicians' pay in other local theaters, the Union was not involved in any of the negotiations.[1] On January 25, 1993 a new collective bargaining agreement was reached. This agreement is the subject of the case before the court.

The collective bargaining agreement is a two-and-one-half page document that sets the terms and conditions of employment for the musicians, conductor, and contractor (the agreement reflects that the contractor will also perform as a musician in the band), as well as rates of pay, overtime, and benefits. However, this agreement, like the previous collective bargaining agreements, makes no provision for arbitration or other grievance procedure and provides no standards for the termination of musicians, conductors or contractors (such as a "just cause" provision). The agreement was signed by David Young, Kary Walker (the Theater's executive producer), and a representative of the Union.

In March 1994 the Theater decided not to use David Young as the contractor for an

---

1. Young (as well as the other musicians) was a member of the Union and a Union representative signed the collective bargaining agreement.

upcoming show, "Windy City." Instead, the Theater hired the then-current band conductor, Michael Duff, to be the contractor for that particular show; shortly, thereafter, in June 1994 Young filed a one-count complaint in district court against the Theater pursuant to § 301 of the Labor Management Relations Act (29 U.S.C. § 185), alleging that the Theater had breached the collective bargaining agreement by hiring Duff as the contractor and thus in fact terminating Young's employment.

The court entered summary judgment for the Theater, finding that the collective bargaining agreement contained no obligation for the Theater to hire David Young as the contractor exclusively for each and every show during the entire five-year term of the collective bargaining agreement and that the agreement was unambiguous.

## II. Analysis

■ We review the district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences drawn from the record in the light most favorable to Young, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Local 103 v. Babcock & Wilcox*, 1 F.3d 589, 591 (7th Cir.1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ We must enforce the terms of a collective bargaining agreement when those terms are unambiguous. *Central States Pension Fund v. Hartlage Truck Serv.*, 991 F.2d 1357, 1361 (7th Cir.1993). If the language of such an agreement lends itself to one reasonable interpretation only, it is not ambiguous. *Illinois Conf. of Teamsters v.*

*Mrowicki*, 44 F.3d 451, 459 (7th Cir.1994) (citing *Ooley v. Schwitzer Div. Household Mfg.*, 961 F.2d 1293, 1298 (7th Cir.), *cert. denied*, 506 U.S. 872, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992)); *Truck Drivers Local 705 v. Schneider Tank Lines*, 958 F.2d 171, 175 (7th Cir.1992) (upheld summary judgment based on "most natural reading" of the collective bargaining agreement).

■ Young argues that although he bargained on behalf of the musicians for the terms of their five-year labor contract with the Theater, the agreement also represents his own personal negotiations with the Theater for a five-year term of employment as contractor. He bases his argument on the fact that the agreement recites his name in two places (in the first paragraph and in parentheses after the set rates of pay for the contractor in paragraph 8) and the Theater's executive producer, Kary Walker, stated on deposition that at the time of the agreement he did not anticipate anyone other than Young being the contractor for the Theater; thus, Young argues, he is entitled to be the exclusive contractor for the five-year term of the agreement. Young contends that under general principles of contract law, a contract for a definite duration cannot be terminated early without good cause or mutual agreement of the parties. Young claims he was discharged without cause, thus breaching the agreement. We disagree.

The collective bargaining agreement comprises ten paragraphs. The first reads:

The following is an agreement between North Drury Lane Productions, Inc., and Snappy Patter (David Young) Orchestra/Band and the Waukegan Federation of Musicians Local 284 covering a five year period beginning January 25, 1993.

The remainder of the agreement sets the terms and conditions of employment for musicians, the conductor, and contractor.[2]

As the Supreme Court has noted:

---

2. Each paragraph of the agreement sets forth a specific aspect of employment at the Theater: the second paragraph establishes the work week (six performances) for the musicians; the third states that the Theater will make efforts to protect instruments left in the orchestra pit between per-

formances; the fourth grants the musicians the right to use the Theater's cafeteria; the fifth recites that the number of musicians in the band for a particular show cannot change during the run of the show; the sixth sets the rates of payment for rehearsal time; the seventh provides

Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment.

*J.I. Case Co. v. National Labor Rel. Bd.*, 321 U.S. 332, 334–35, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944). *See also In re Continental Airlines Corp.*, 901 F.2d 1259, 1264 (5th Cir. 1990) ("Unlike a contract of employment, ordinarily a collective bargaining agreement does not create an employer-employee relationship.... It neither obligates any employee to perform work nor requires the employer to provide work."), *cert. denied*, 506 U.S. 828, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992).

■■■■ "[A] labor agreement is not a contract of employment; employees are hired separately and individually, but the tenure and terms of their employment once in the unit are regulated by the provisions of the collective bargaining agreement." Robert A. Gorman, *Labor Law* at 540 (1976); Patrick Hardin, *Developing Labor Law* at 588–89 (3d ed. 1992). Young has cited no cases, nor have we been able to discover any, where a

collective bargaining agreement provided individual guarantees of employment to named employees.[3]

Turning to the agreement itself, there are no explicit guarantees of employment for Young in the language of the contract. Although Young's name appears twice in the document, the ten paragraphs of the agreement relate solely to the collective conditions of employment for musicians, conductor, and contractor. Young's name may appear simply to designate the fact that Young (who was a musician as well as a contractor) would be paid at contractor rates rather than as a musician while performing these services at the Theater. Young did sign the contract, but he signed it as "Contractor," on behalf of the musicians (including himself *as* musician). Because the agreement does not expressly state that Young will be the contractor for the five-year term and is silent regarding the termination procedures for any employees, we refuse to read into the contract terms that are not specifically set forth therein. *See Heller v. Equitable Life Assur. Soc.*, 833 F.2d 1253, 1257 (7th Cir.1987) (refusing to "enlarge the terms of the [insurance] policy beyond those clearly defined in the policy agreed to by the parties."); *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1412 (7th Cir.1994) (holding that the court cannot expand the coverage of an insurance policy beyond its specific terms). Similarly, the

an option for the Theater's producer to require seven performances per week (as opposed to the usual six-performance work week); the eighth provides the weekly payment rates for musicians, conductor, and contractor; the ninth obligates the Theater to contribute to a Union welfare fund; and the tenth requires the Theater to contribute to a pension fund.

3. Indeed, if Young's interpretation is correct (and the agreement is not a collective bargaining agreement but a personal services contract) we have no jurisdiction to review his claim: "A simple employment contract is not within the scope of section 301," *Korzen v. Local Union 705, Int'l Brotherhood of Teamsters*, 75 F.3d 285, 288 (7th Cir.1996), because section 301 provides jurisdiction only for "violation of contracts between an employer and a labor organization ... or between any such labor organizations." 29 U.S.C. § 185(a). *See also Wooddell v. International Brotherhood of Elec. Workers*, 502 U.S. 93,

112 S.Ct. 494, 116 L.Ed.2d 419 (1991). Young also makes the argument, in support of his interpretation of the agreement, that he was in reality an "independent contractor" or putative employer of the musicians and not merely a bargaining agent. This position, however, would defeat federal jurisdiction because independent contractors are not subject to federal protection under the Labor Management Relations Act, *see* 29 U.S.C. § 152(3) (defining "employees" subject to the Act to exclude independent contractors), and suits between two "employers" would not meet the requirements for jurisdiction under 29 U.S.C. § 185 (suits may be brought only between an employer and a labor organization, or between two labor organizations). However, because the language of the collective bargaining agreement does not support Young's interpretation that the agreement was an employment contract for him personally, we need not reach the jurisdictional issue.

court will not expand the terms of a labor agreement.

Taken as a whole, the document yields to but one reasonable interpretation: it is an agreement negotiated by Young on behalf of all musicians including himself, which recites his name as the contractor as well. As a labor contract, the agreement represents the rights of all the union-represented employees (i.e., the musicians, conductor, and contractor) and it sets forth the specific terms and conditions of employment for the musicians, including the conductor and contractor. From our review of the record, we are unable to discover within the collective bargaining document language mandating that the Theater use David Young exclusively as the contractor during the term of the agreement. Young's argument misses the point: the agreement referred to and signed by him (as a musician and contractor), the Theater, and the Union is more properly designated as a collective bargaining agreement and not as a contract for personal services. *See J.I. Case,* 321 U.S. at 335, 64 S.Ct. at 579 ("After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer ... is free to select those he will employ or discharge.").

Further, as pointed out earlier, the agreement contains no right of arbitration or just cause provision. Therefore, even if Young had an expectation of employment as contractor arising from and out of the collective bargaining agreement, in the absence of specific just cause or arbitration language, it is clear that the Theater was free to terminate his services at will. *See Truck Drivers Local 705,* 958 F.2d at 174–75 (granting summary judgment to employer and refusing to imply a just cause provision into a collective bargaining agreement). Because the agreement is clear and unambiguous as to the labor rights of the respective parties as musicians and employer, the Theater was under no obligation to hire Young exclusively as contractor, and the Theater is entitled to summary judgment on Young's claim that it breached the collective bargaining agreement

by hiring Michael Duff as contractor instead of David Young.

## III. Conclusion

The judgment of the district court is AF-FIRMED.